## J. N. GROESBECK ET AL. V. L. B. HARRIS.

### No. 6871.

1. **Location—File—Notice.**—A file or location is notice of the appropriation of the land covered by it. A change made in the survey upon the location including land not covered by the file is notice as to that included only from date of the record of the field notes of such survey in the surveyor's office.

2. **Suit for Breach of Warranty.**—The warrantor was not made a party to the suit for the land in which his vendee was evicted. The vendee sued upon the warranty. The action was defeated by showing the validity of the title conveyed notwithstanding the judgment of eviction.

3. **Presumption — Survey.**—It will be presumed in the absence of evidence on the subject that the surveyor actually run the lines called for in his official field notes.

4. **Presumptions from Issuance of Patent.**—It appearing that patent was issued upon a survey in litigation, it must be presumed that the field notes had been returned to the Land Office within twelve months from the date of the survey.

5. **Surveys Partly in two Land Districts—Record of Field Notes.**—If the surveys 313 and 314 (on boundary line of Bexar and Palo Pinto Land Districts) had been located and surveyed, and the field notes returned to the General Land Office from the Bexar Land District when appellants made their file (in conflict), it could make no difference whether the surveys were recorded in the Palo Pinto District or not, since the evidence in the Land Office would be notice to them that the land was equitably owned prior to their file. Const., art. 14, sec. 2.

6. **Pleadings—Action for Breach of Warranty.**—A plea of failure of consideration by a vendee in defense of an action by the vendor for the purchase money on an executed contract must allege the facts that show a paramount title. The allegations that the title is worthless by reason of conflict with older surveys might be good on general demurrer in a suit for breach of warranty.

7. **Actual Eviction not Necessary in Suit on Warranty.**—Actual eviction was not necessary to enable plaintiff to maintain his suit. If he could show that there was a superior outstanding title to the land of which he had no notice at the time of his purchase he was entitled to recover the purchase money to the extent of the conflict, although not disturbed in his possession.

8. **Measure of Damages on Breach of Warranty.**—The measure of damages on eviction is the purchase money with interest commensurate to liability for mesne profits to the true owner.

APPEAL from Bexar. Tried below before Hon. G. H. NOONAN. The opinion states the case.

*McLeary & King*, for appellants.—1. In a suit by a warrantee for breach of warranty to 640 acres of land, an amended petition filed alleging breach of warranty to a 330 acres tract in addition, sets up a new cause of action, and requires service thereof upon defendants. McMillan v. Jones, 66 Texas, 102; Pendleton v. Colville, 49 Texas, 526; Furlow v. Miller, 30 Texas, 29; De Walt v. Snow, 25 Texas, 321; Morrison v. Walker, 22 Texas, 19; Weatherford v. Van Alstyne, 22 Texas, 22.

2. In a suit by warrantee for breach of the covenant of warranty, when he alleges that the title is void by reason of conflict with older surveys, without naming them, it is error to permit plaintiff to introduce in evidence the land certificate, survey, and patent so in conflict. Mims v. Mitchell, 1 Texas, 444; Ballard v. Anderson, 18 Texas, 377; Malone v. Craig, 22 Texas, 609; Thompson v. Eanes, 32 Texas, 190.

3. It is error to allow field notes to be read in evidence for the purpose of showing title, when the surveyor's certificate thereto fails to show that said surveys were made upon the ground. Rev. Stats., art. 3908.

4. It is error to admit in evidence certified copies of field notes, unless it appears that the same have been duly recorded in the land district where the land is situated. Rev. Stats., art. 3923.

5. It is error to allow field notes to be read in evidence for the purpose of showing title by location, when it is not affirmatively shown that said field notes had been returned to the General Land Office within twelve months. Rev. Stats., art. 3909; Lewis v. Durst, 10 Texas, 398.

6. A survey embracing land not included in the file takes effect only from the time of the record of the field notes, and can not affect the rights of one who located thereon without notice after the date of the file, but before the record of the survey.

7. The warrantee in possession can not recover in an action for the breach of the covenant of warranty by merely showing the existence of a paramount title. 2 Dev. on Deeds, secs. 928, 924; Sprague v. Baker, 17 Mass., 590; McGary v. Hustings, 39 Cal., 367; Norton v. Jackson, 5 Cal., 265; Backus v. McCoy, 17 Am. Dec., 588.

8. The warrantee can not even surrender possession and maintain a suit upon the warranty until the adverse title is asserted or some pressure is brought to bear upon him by one holding paramount title. 2 Dev. on Deeds, sec. 924, and notes; Moore v. Vail, 17 Ill., 190; 2 Wait's Act. and Def., 375.

9. When the warrantee is in possession of the land conveyed and has never been evicted, it is error to render judgment for the purchase money and interest from the date of the purchase. Brown v. Hearon, 66 Texas, 65; Denson v. Love, 58 Texas, 468; Trevino v. Cantu, 61 Texas, 88; McClelland v. Moore, 48 Texas, 355.

10.   When land has been occupied by the warrantee and he has not accounted for the rents and profits, it is error to render judgment for the purchase money and interest from the date of the deed.   Interest should only be given from the date of eviction.   Brown v. Hearon, 66 Texas, 65; Stebbins v. Wolf, 33 Kans., 765; Denson v. Love, 58 Texas, 468; Trevino v. Cantu, 61 Texas, 88; McClelland v. Moore, 48 Texas, 355.

*George C. Altgelt,* for appellee.—1. It was matter of evidence on the part of appellee to prove that the title conveyed to him was void; that the land was not subject to location under the certificate and patent conveyed to him by reason of prior location.   Const., sec. 2, art. 14.

2.   After a location and survey has ripened into a patent, it will be presumed that it was actually surveyed upon the ground, and a survey not actually made upon the ground is not therefore void if otherwise regular.

3.   Field notes duly recorded in the proper surveyor's office need not be again recorded in the new district after the creation of a new district out of a portion of the old district.   Gen. Laws 1874, p. 161.

4.   When the record is silent as to the date of return of field notes to the General Land Office, but it appears that patent has issued upon the survey, it will be presumed that the field notes were properly returned in due time.

5.   Appellants not showing that they were misled by the file of the Burnett league and by the fact that it was not surveyed strictly according to its file, and not having shown a want of notice upon the part of the owner of the second location, can not complain that the court held that the Burnett league was a superior title to the junior location, though recorded after the file upon which the junior location is made.

6.   The record of the field notes in Bexar County, to which district that portion of Palo Pinto Land District then belonged, was constructive and conclusive notice to the junior locator of the prior appropriation of the land.

7.   A warrantee to whom a void title is conveyed can recover the purchase money without showing an eviction.   Doyle v. Hord, 67 Texas, 621.

8.   Appellants not having pleaded as a defense that appellee had the use and enjoyment of the lands, can not complain that interest upon the purchase money was awarded.

GARRETT, PRESIDING JUDGE, *Section B.*—This was a suit by the appellee L. B. Harris to recover of the appellants J. N. Groesbeck and others for a breach of warranty of the title to land.   Plaintiff alleges that on September 12, 1883, the defendants conveyed to him in fee simple, with general warranty of title, several tracts of land, among

which were two tracts situated in Tom Green County, known as surveys Nos. 1 and 3, in the name of the Houston Tap & Brazoria Railway Company, for 640 acres each; that he bought and had paid for said land at the rate of $1.50 per acre; that he had acquired no title whatever to the survey No. 1, and none to 330 acres of the survey No. 3, because the land was included in older surveys not subject to location, and said surveys were not located upon vacant and unappropriated public domain.

Defendants answered by general demurrer, general denial, and also set up special defenses.

Trial was had before the court without a jury, January 24, 1889, and judgment was rendered in favor of the plaintiff for the purchase price of the land with interest from the date of the sale.

Defendants have appealed, and have assigned errors on account of which they seek a reversal of the judgment of the court below. We do not deem it necessary to notice all of the numerous assignments of error.

The sale of the land by the appellants to Harris was shown as alleged by him. It was shown also that a suit had been brought by the owners of the Matthew Burnett league against Harris in Tom Green County for the survey No. 1 as in conflict with said Burnett survey, and that judgment had been recovered against Harris therefor. Appellants were not parties to the suit and had no knowledge of its pendency. After judgment against him Harris bought the land included in said survey No. 1 from the owners of the Burnett survey.

Appellants' fifth assignment of error is: "The court erred in finding that the title to the Burnett league was paramount to the defendants' title to survey No. 1, sold by defendants, for the reason that defendants at the time of the entry and file had no notice of the prior appropriation of the land, the defendants' entry being recorded on March 19, 1881, the Burnett field notes being recorded April 9, 1881, the Burnett file being prior in point of time, but covers different land than that embraced in their survey or that covered by defendants' file."

McCord and Lindsay, who were the locators of the Burnett league, made their application or file July 23, 1880, which was filed with the surveyor July 26, 1880. The land covered by this file was a rectangle, commencing at the northwest corner of the East Line & Red River Railway Company survey No. 1, running west 6000 varas and south 4000 varas. On November 1, 1880, a survey was made for the Burnett league, and the field notes of this survey were filed and recorded in the surveyor's office April 9, 1881. These field notes covered other land than that included in the original file, and include land upon which appellants' survey No. 1 was afterward made. They called for a different beginning corner entirely, and placed the north line of the survey considerably north of the north line of the original file or location of the Bur-

nett league.   On September 10, 1885, the field notes of the survey were corrected, but not so as to change the general position of the tract, and patent issued in accordance therewith November 23, 1885.

Appellants made their file for survey No. 1 on March 1, 1881, and the survey and field notes in accordance therewith were made and recorded with the surveyor of the land district March 19, 1881; they were filed in the Land Office March 30, 1881, and patent was issued May 23, 1881.  The land in controversy was first surveyed for the Burnett locators, but their field notes were not recorded until after it had been previously appropriated by the appellants, who located without notice of the prior survey under the Burnett certificate.   The Burnett locators in making their survey ignored the boundaries called for in their file, and included adjoining lands which had been previously appropriated by appellants.   When appellants made their file they respected the Burnett file and made their survey so as to conform thereto, and at that time there was nothing of record showing any conflicting file or survey.   The surveyor Tarver, plaintiff's witness, testified that he found no conflict between survey No. 1 and the Burnett league when he surveyed the Burnett league according to its file.   Although the Burnett survey had already been made when the appellants made their file, there was no evidence of the appropriation in any manner so as to protect it from subsequent location.   Const. 1876, art. 14, sec. 2. The original location on file made by the owners of the Matthew Burnett certificate could appropriate only the land covered by it; and the change made by the survey was a new appropriation of other land, which could have force against subsequent locators without notice only from the time of the record of the field notes in the surveyor's office. Evitts v. Roth, 61 Texas, 87; Railway v. Thomson, 65 Texas, 190. Since the survey No. 1, in the name of the Houston Tap & Brazoria Railway Company, located by the appellants, lay entirely without the original file or location of the Matthew Burnett league, plaintiff failed to show a paramount outstanding title to the survey No. 1, and the finding of the court to that effect was wrong.

The correctness of the finding of the court that there was a paramount title to 330 acres of the survey No. 3 in the name of the Houston Tap & Brazoria Railway Company, sold by the appellants to the plaintiff, is questioned by appellants' sixth assignment of error.   As appears from the records of the General Land Office and the testimony of the surveyor Tarver, it is clear that the Houston & Texas Central Railway Company surveys Nos. 313 and 314, which were older than the survey No. 3, conflicted with said survey No. 3 to the extent of 330 acres, and constituted a title paramount thereto.   We are also of the opinion that the evidence which was received by the court to show the location and appropriation of the land covered by said surveys was admissible.   It will be presumed in the absence of evidence on the

subject that the surveyor actually surveyed the lines called for. Maddox Bros. & Anderson v. Fenner, 79 Texas, 291. One of the surveys had been patented, and it must be presumed that the field notes had been returned to the Land Office within twelve months from the time of the survey, which was made in 1872. This being the case, the land would appear to have been at least equitably owned at the time appellants made their file for survey No. 3. If the surveys 313 and 314 had been located and surveyed and the field notes returned to the General Land Office from the Bexar district when appellants made their file, it could make no difference whether they were recorded in the Palo Pinto district or not, since the evidence in the Land Office would be notice to them that the land was equitably owned prior to their file. Const., art. 14, sec. 2. Hence it is not necessary to inquire whether the land lay in the Bexar district or the Palo Pinto district, or if in both, as to the necessity of the record of field notes in both districts.

It is unnecessary to consider the action of the court in overruling defendants' demurrer or the admission of evidence to show paramount title under the pleadings. The petition alleges that the title is worthless by reason of conflict with older surveys. This might be good on general demurrer in a suit on breach of warranty of title; but it has been frequently held by our Supreme Court that a plea of failure of consideration by a vendee in defense of an action by the vendor for the purchase money on an executed contract must allege the facts that show a paramount title. Woodward v. Rodgers, 20 Texas, 178; Tarlton v. Daily, 55 Texas, 95; Haralson v. Langford, 66 Texas, 113.

A conflict to the extent of 330 acres of the Houston Tap & Brazoria Railway Company survey No. 3 was shown between that survey and the Houston & Texas Central Railway Company surveys Nos. 313 and 314, which were older surveys than No. 3, leaving plaintiff with title to only 310 acres of the survey conveyed to him by the defendants. Plaintiff was still in possession of the land in conflict, and there was no proof that the owners of the surveys Nos. 313 and 314 were asserting or had ever asserted any hostile title, or claimed any conflict with the survey No. 3, or disturbed plaintiff's possession.

Appellants contend that the court erred in finding for the plaintiff as to the 330 acres, because the proof showed that he was in possession of the land, had never been evicted, and no adverse title had ever been asserted against him. Actual eviction was not necessary to enable the plaintiff to maintain his suit. If he could show that there was a superior outstanding title to the land, of which he had no notice at the time of the purchase, he was entitled to recover the purchase money to the extent of the failure in the title. Doyle v. Hord, 67 Texas, 622. Plaintiff only seeks to recover for a diminution of price by reason of failure of title to a part of the survey. In Tarpley v. Poage, 2 Texas, 148, it was held, in a suit for the purchase money, that "the vendee must by competent

and sufficient evidence establish the existence and validity of the outstanding title; but when this is done there is no reason why his remedy should be delayed until disturbed in the enjoyment of the land, and this even when the defendant is in possession." * * * The rule is well established in this State, that although the suit for the purchase money is upon an executed contract, recovery may be defeated by allegation and proof of a superior outstanding title and danger of eviction of which the vendee had no notice at the time of the purchase. Cooper v. Singleton, 19 Texas, 260; Smith v. Nolen, 21 Texas, 497; Price v. Blount, 41 Texas, 475; Demaret v. Bennett, 29 Texas, 268.

In rendering judgment the court below allowed the plaintiff interest on the purchase money from the date of the sale to the date of the judgment. This, of course, was error as to the land in conflict with the Burnett survey. But as to the 330 acres in conflict with the Houston & Texas Central Railway Company surveys Nos. 313 and 314, having been shown to be in possession thereof, Harris would be accountable to the true owner for rents and profits. Such being the case, his measure of damages would be interest for the same period for which he is accountable for mesne profits.

The judgment of the court below should be reversed and the cause remanded, and we so report.

*Reversed and remanded.*