## H. J. BOLTON v. G. C. GIFFORD & COMPANY.

Decided January 29, 1907.

**1.—Note—Surety Liable for Part Only—Parties.**

Where the sureties on a note are each by agreement liable for only a part or certain proportion of the entire debt suit may be maintained against each separately without joining the others. The liability of each surety is independent of that of the others.

**2.—Same—Stipulation for Attorney's Fee.**

In enforcing a contract for indemnity the plaintiff must allege and prove

the extent to which he has been damnified; a stipulation in a note for payment of ten percent attorney's fees is a contract of indemnity and in a suit upon such a note the plaintiff must allege and prove that he has either paid or contracted to pay said fees.

### 3.—Same—Same.

In a suit on a note stipulating for ten percent attorney's fee if placed in the hands of an attorney for collection, and the petition simply alleges that the plaintiff had placed the note in the hands of an attorney for collection, the petition is subject to special exception on the ground that it failed to allege either that plaintiff had paid or contracted to pay to his attorney the sum stipulated in the note, or that the sum claimed was a reasonable compensation for the services performed.

### 4.—Tender.

To secure the benefit of a tender a debtor must tender the full amount for which he is liable, and that before suit is filed. The fact that the creditor makes an excessive demand is immaterial; the debtor must determine for himself the correct amount due and tender that sum.

### 5.—Deed of Trust—Commission to Trustee.

The distinction between a stipulation in a note that a certain percent of the amount due shall be added as attorney's fee, and a stipulation in a deed of trust that a certain percent of the sum brought by the property at the sale shall be paid to the trustee as his commission, is that in the case of the attorney he is not a party to the contract of indemnity and it is not contemplated that the holder of the note shall benefit by the contract; in the case of the trustee he accepts the trust for a fixed compensation and may therefore enforce its terms.

Appeal from the District Court of Wharton County. Tried below before Hon. Wells Thompson.

*G. G. Kelly* and *I. N. & J. H. H. Dennis,* for appellant.—The court erred in overruling defendants' first special exception to plaintiffs' petition, setting out that there were other necessary parties who should have been joined as defendants in this suit. Love v. Keowne, 58 Texas, 191; National Bank of Jefferson v. Texas Inv. Co., 74 Texas, 421; Skipwith v. Hurt, 94 Texas, 331; Mathonican v. Scott, 87 Texas, 400.

A provision in a note for the payment of 10 percent attorney's fees should the note be placed with an attorney for collection, is a contract of indemnity, and not for liquidated damages. Texas Land & Loan Co. v. Robertson, 85 S. W. Rep., 1020; Dunovant's Estate v. Stafford, 36 Texas Civ. App., 33; Hammond v. Atlee, 15 Texas Civ. App., 267; Robertson v. Holman, 36 Texas Civ. App., 31; Luzenberg v. Building & L. Assn., 9 Texas Civ. App., 261.

A clause in a deed of trust securing the payment of notes is a contract of indemnity by the debtor in favor of the creditor, and in a suit by the creditor it would be necessary to allege and prove that the amount charged against the debtor as trustee's commissions had been paid by the creditor, or that he had agreed to pay to the trustee said sum, or that same was a reasonable sum for the services of said trustee. Texas Land & Loan Co. v. Robertson, 85 S. W. Rep., 1020.

*W. L. Hall* and *Brooks & Cline,* for appellees.—While a contract for

the payment of attorney's fees is a contract of indemnity and not one for a penalty, still it being agreed upon by the parties, and by them fixed at 10 percent upon the amount due, it will be conclusively presumed that this is a reasonable fee in the absence of proof to the contrary; and the plaintiffs asserting a cause of action on these notes are not required to plead and prove that the amount fixed by contract was reasonable, but the maker of the note defending as against his own contract must take the laboring oar and must not only assert in the pleading, but must prove on the trial affirmatively, that the amount of attorney's fees, as fixed by the contract, are, under all the circumstances, unreasonable, and that the enforcement of the contract, as written, would result in the infliction of a penalty, and not in the payment of an indemnity against loss. Donovant v. Stafford, 36 Texas Civ. App., 33; Solomon v. Huey, 1 Posey, 267.

GILL, CHIEF JUSTICE.—This suit was brought by G. C. Gifford & Company, against the Wharton Oil & Cotton Company, a corporation, and H. J. Bolton to recover the balance due on promissory notes executed by the corporation upon which Bolton was a surety. The corporation was alleged to be insolvent and was made a party defendant for formal purposes only. Bolton's suretyship was alleged to be for only a proportionate amount of the balance due, and judgment was sought against him for that sum and his proportion of ten percent attorney's fees on the face of the note as stipulated in the body of that instrument.

Bolton defended on the ground that he had, prior to the bringing of the suit, tendered to the plaintiffs the amount for which he was liable and claimed that he was liable neither for any part of the attorney's fees nor for any part of the commissions of a trustee who had made a sale of certain property of the corporation which had resulted in certain credits on the note. Under this latter feature of his answer he contended that the plaintiff had wrongfully deducted the amount of the trustee's commissions from the sum which the property brought and that thereby he had been deprived of the full credit to which the facts entitled him.

A trial to the court without a jury resulted in a judgment in favor of plaintiffs for the full sum claimed and Bolton renews his contentions on this appeal.

The facts insofar as a statement of them is necessary to a proper disposition of this appeal are as follows:

H. J. Bolton, R. H. D. Sorrel, George Seeligson and others associated with them formed a corporation known as the Wharton Oil & Cotton Company. This concern bought out the Wharton Gin and Milling Company. The new corporation by the execution of certain notes and a deed of trust on the property of the concern assumed the payment of its predecessor's indebtedness amounting to $23,000 on which the incorporators became sureties as hereinafter shown. There was also included in this transaction other sums in addition for the purpose of financing the new concern. The payee of these notes was the firm of Gifford & Co., and it was agreed that any further advances made to the corporation by Gifford & Co. should first be paid out of the assets of the concern in preference to the lien thereon to secure the notes. To this

obligation all the stockholders, except Seeligson and one other, became sureties in the proportion that their stock bore to the face of the obligation, each surety indicating opposite his name the amount of his stock. They all became sureties in the same way for such part of the obligation as exceeded the original $23,000.

After several extensions in which the nature of the obligation remained the same, except as to amount, on March 20, 1905, an agreement for a ninety day extension of the notes was entered into by all concerned. At that time the notes amounted to $29,794. This extension recognized the fact that at that time Gifford & Co. held demand notes against the corporation for advances made amounting to $15,000 and that they were secured by a first lien on all the property of the concern. In consideration of this extension all the stockholders became sureties in proportion to their stock and their payment was further secured by an extension of the deed of trust which had hitherto secured them. The notes contained a recital that if they were placed in the hands of an attorney for collection ten percent additional should be paid as attorney's fees.

On April 1, 1905, George Seeligson, a stockholder and one of the sureties, sued the corporation for $1,308.44 and got judgment for that sum. He thereupon levied an execution upon the property of the concern to enforce his judgment.

Gifford & Co. and the other sureties, in view of the fact that the lien for advances in favor of Gifford & Co. was not recorded and fearing that the property might pass into the hands of persons at execution sale who might be innocent of knowledge of the unrecorded lien, thought it necessary for the protection of their rights to join in an application for injunction to restrain the sale. This they did and the sale was enjoined. The briefs do not disclose the further history of that litigation, but it does appear that the trustee named in the deed of trust given for the payment of the notes for $29,794 refusing to act, Gifford & Company being duly empowered so to do, appointed a substitute trustee who proceeded to sell the property on August 2, 1905. At the trustee's sale Gifford & Company became the purchasers for the sum of $22,230. By that time the notes upon which the stockholders were sureties amounted to $35,840.70. To this Gifford & Company added attorney's fees on the whole amount, viz., $3,584.07. They then deducted from the sale price $1,115 as commissions for the trustee and credited the remainder, $21,115.77, on the sum of the notes and attorney's fees. On the 3d day of August, 1905, Gifford & Company rendered to each of the sureties a written statement indicating the above credit and showing the amount claimed to be due from each of the sureties on the basis of the amount of stock held by each.

On August 12, George Seeligson and Bolton each tendered to Gifford & Company the amount thus shown to be due by him, less his proportion of the attorney's fees which each claimed was an unjust and unlawful charge. The tenders made were rejected and this suit was brought against Bolton for the full sum claimed against him.

The first point made in the court below and renewed here is that the other sureties were necessary parties and the cause ought not to proceed without them. The court refused to sustain the point and

his action is assigned as error. We are of opinion the assignment is without merit. The liability of the sureties was each independent of the other under the contract of suretyship as written. The plaintiff could have sued one and forgiven the debt of the others and the defendant could not have been heard to complain. As between the sureties there was no mutuality with respect to their suretyship. Either could have compromised his debt and secured his discharge without affecting the liability of the other. They were proper but in no sense necessary parties to this suit, and there is no feature in this record which should alter the rule in such a case.

Defendant specially excepted to so much of the petition as claimed attorney's fees, on the ground that it failed to allege either that plaintiff had paid or contracted to pay to his attorneys the sum stipulated in the notes or that the sum claimed was a reasonable compensation for the service performed. The court overruled the exception and of that action appellant here complains. The point made is that the stipulation for attorney's fees is a mere contract for indemnity and that it therefore devolved on appellees to allege and prove either that they had so contracted with or had so paid their attorneys, in which event the defendant might be estopped to deny the reasonableness of the sum fixed by contract, or else that the sum paid or promised was reasonable.

That such stipulations are merely contracts for indemnity seems at least fairly well settled in this State. The proposition is not seriously questioned in this cause, so we merely cite the cases in which it has been established. (Texas Land and Loan Co. v. Robertson, 85 S. W. Rep., 1020; Hammond v. Atlee, 15 Texas Civ. App., 267; Robertson v. Holman, 36 Texas Civ. App., 31; Luzenberg v. B. & L. Assn., 9 Texas Civ. App., 261; Dunovant's Estate v. Stafford, 36 Texas Civ. App., 33.)

In enforcing contracts of indemnity it is the general rule that the plaintiff must allege and prove the extent to which he has been damnified, thus giving the court a basis for a judgment. It was held by this court in Dunovant v. Stafford, *supra,* that the maker of such a note would be estopped to say the holder was not justified in obligating himself to his attorney for the sum named in the note. If that holding is correct (and by this we do not intend to question the soundness of that decision) it would seem to follow that in a sense the stipulation in the note *prima facie* establishes the reasonableness of the sum named so that the holder might in good faith so contract. In this view it might follow that it devolved on defendant to plead and prove as matter of defense either bad faith on the part of the holder in so contracting or, in the absence of contract on the holder's part, that the sum stipulated exceeded reasonable compensation.

It is not necessary, however, in this case to go beyond the case last cited. There an allegation was present setting up the fact that the holder had so obligated himself and had therefore been damnified to that extent. Here the allegation is simply that the holder had placed the notes in the hands of an attorney for collection. The holder is not alleged to have acted on the faith of the ten percent stipulation, so there can be no estoppel. On the face of the petition he has been damaged by the default no more than he will owe his attorney on a *quantum*

*meruit* and there is no basis in his plea for ascertaining that amount. We think the exception should have been sustained.

Under the sixth assignment it is contended that the judgment should be reversed because there was no evidence either that the plaintiffs had paid or contracted to pay their attorneys any sum, or that the sum stipulated and which formed the basis of the judgment was reasonable. This assignment must be sustained because it is a just criticism of the record, and because the proposition contended for follows from what has been said in disposing of the special exception.

The further point is made that in no event could the sureties be liable for attorney's fees on a greater sum than remained due after the property covered by the deed of trust was sold and the proper credit made. It is contended that the deed of trust provides that the property shall be first sold and the credit made before anything became due by the sureties. We have carefully examined the contract of suretyship and have found no such stipulation. The obligation of the sureties is not distinguished from that of sureties generally except in the fact that the sums for which they were respectively bound were stated. In all other respects the obligation was as absolute as that of the principal in the notes.

But the facts in this connection are that at the time the injunction proceedings were instituted (which was before the notes were due) they were placed in the hands of an attorney in connection with that litigation, and in no sense for purposes of collection. The injunction proceeding was for the protection of an obligation of the oil company alone and had no relation to the notes here sued on. The fact that the sureties joined in that proceeding in the belief that thereby they would protect themselves against Seeligson, their cosurety, and so receive a greater credit from the trustee's sale, can have no bearing on the question before us, because that was an independent litigation. To the attorneys who brought that suit they would be bound by a contract directly with them in which the collection of these notes formed no part of the consideration.

It is also to be inferred from the record that though the attorneys who brought this suit for plaintiffs had at one time prior to the trustee's sale had these notes in their possession they held them neither for the purpose of collection nor suit either against the principal or sureties and that no service was performed looking to their collection. The notes were subsequently withdrawn from their possession and the plaintiffs elected to proceed first through the trustee. Thereafter, and between the time of the sale and the tender by the sureties, they were placed in the attorney's hands for the collection of the balance due.

It appears clear from this that as the balance unpaid was due and payable and the sureties having failed to make any tender until nine days thereafter, it devolved on them to tender such sums as would discharge the balance due by them on the principal and interest of the note and such further sum as would cover the pro rata of each for reasonable attorney's fees on the balance remaining unpaid. For this reason the tender made was not effective and the plaintiffs were within their right in declining to accept it as a discharge of the debt.

The question is not affected by the fact that the plaintiffs made an excessive demand. The contract of suretyship was absolute both as to the principal and a reasonable attorney's fee if placed in the hands of an attorney for collection. The plaintiffs had the right to so place it without demand, if for no other reason than that by the terms of the obligation demand was waived, and to get the benefit of a tender the defendant must have ascertained the correct amount due and tendered that sum.

What we have said disposes of the assignments questioning the materiality of evidence offered as to the injunction suit. We are of opinion it has no material bearing upon any question in this case.

Appellant seeks to apply to the stipulation in the deed of trust fixing the commissions of the trustee at 5 percent of the sum brought by the property at the sale the same principle which we have applied to the attorney's fee clause in the notes. In the case of the attorney the latter is not a party to the contract of indemnity and it is not contemplated that the holder himself shall benefit by the contract. In the case of the trustee he accepts the trust for a fixed compensation and may therefore enforce its terms. The contention of appellant in this regard can not be allowed.

For the reasons given the judgment is reversed and the cause remanded for trial in accordance with the views expressed in this opinion.

*Reversed and remanded.*