event same should not be sufficient to pay same in full, and, as so reformed, the judgment will be affirmed.

---

FRANTZ et al. v. MASTERSON et al.†

(Court of Civil Appeals of Texas. Jan. 5, 1911. Rehearing Denied Jan. 26, 1911.)

1. VENDOR AND PURCHASER (§ 138*)—DEFECTS IN TITLE OF VENDOR—PARTIAL FAILURE OF TITLE.

A purchaser of lands under an executed contract cannot resist payment of the consideration because of partial failure of the vendor's title, unless he purchased in ignorance of the defects.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 261; Dec. Dig. § 138.*]

2. VENDOR AND PURCHASER (§ 142*)—DEFECTS IN TITLE OF VENDOR—ENTIRE FAILURE.

A purchaser of lands under an executed contract can resist payment of the consideration where the vendor's title is wholly defective or there is a valid outstanding title in another.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 266; Dec. Dig. § 142.*]

3. VENDOR AND PURCHASER (§ 272*) — RESTRAINING ENFORCEMENT OF VENDOR'S LIEN —DEFECTS OF TITLE IN VENDOR.

A purchaser is not entitled to restrain foreclosure of vendor's lien notes on the ground of defects in title of a portion of the land sold where no eviction is shown, and plaintiff makes no offer to pay the part of the notes justly due, and it is immaterial that the parties to the contract of sale entered into a collateral agreement binding the vendor to perfect the title to all the lands to enable the purchaser to sell a portion of it to meet the payments due under the contract.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 768; Dec. Dig. § 272.*]

4. VENDOR AND PURCHASER (§ 280*)—DEMURRER—GENERAL DENIAL.

Where plaintiffs sued to restrain foreclosure of vendor's lien notes, and defendant reconvened and prayed foreclosure of the lien notes and the allowance of attorney's fees, a general denial by way of answer was sufficient to put defendant on proof, and hence it was improper to sustain a demurrer thereto.

[Ed. Note.—For other cases, see Vendor & Purchaser, Cent. Dig. §§ 784–791; Dec. Dig. § 280.*]

5. APPEAL AND ERROR (§ 664*) — RECORD — CONFLICT.

Though the judgment of the trial court recited that demurrers and exceptions urged by the defendants against the plaintiffs' answer to the cross-bill were sustained, an assignment of error therein will not be considered where the record fails to show that such demurrers and exceptions were interposed, and the court proceeded as though the answer had not been attacked.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2856–2859; Dec. Dig. § 664.*]

6. BILLS AND NOTES (§ 534*)—ACTION—RECOVERY OF ATTORNEY'S FEES.

Where a note contained a stipulation for attorneys' fees at a stated percentage, and the owner of the note in good faith agreed with an attorney to pay him such percentage, that amount was recoverable whether it was a reasonable fee or not.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1946, 1947; Dec. Dig. § 534.*]

7. BILLS AND NOTES (§ 471*)—ACTION—RECOVERY OF ATTORNEY'S FEES—PLEADING.

In an action on a note, in which plaintiff seeks to recover attorney fees as stipulated therein, plaintiff need not allege that the contract with his attorney to collect the note was made in reliance on the stipulation, and that the maker is estopped to contest the reasonableness of the fee agreed upon.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1469, 1470; Dec. Dig. § 471.*]

Error from District Court, Harris County; Norman G. Kittrell, Judge.

Action by Frank Frantz and others against A. R. Masterson and others. From a judgment for defendants, plaintiffs bring error. Affirmed.

Hogg, Gill & Jones, for plaintiffs in error. Elliott Cage, for defendants in error.

McMEANS, J. The following statement of the nature and result of the suit made by appellants in their brief is substantially correct and is adopted:

"This suit was brought by Frank and Orville Frantz and George C. Thompson to enjoin the sale of about 50,000 acres of land by a trustee, who was purporting to act in favor of A. R. and H. Masterson in the matter of a foreclosure of about $220,000 worth of vendor's lien notes against said land under a deed of trust, all the notes not being due at that date upon their face, but only one of them so due, and the rest having been declared due by the holder on the assumption that default had been made in the payment of one of the notes and interest. It was averred that, according to their provisions, it was the right of the holders upon default to declare them all due, and to proceed to foreclosure. The principal ground upon which the suit was brought by plaintiffs in error was that defendant in error A. R. Masterson, from whom George C. Thompson, one of the plaintiffs in error, had purchased, had undertaken to furnish an abstract of title showing good title to the 50,000 acres of land. The attorneys for George C. Thompson had found some defects in the abstract of title, which A. R. Masterson and H. Masterson, who was interested with him, assured Thompson that they could and would speedily cure, and insisted that the sale be perfected and the transaction closed; that Thompson made the cash payment and executed the vendor's lien notes and deed of trust securing them, and A. R. and H. Masterson, in consideration of the prompt closing of the deal, executed a written collateral agreement that they would proceed with all diligence to correct the defects pointed out by the attorneys for Thompson so that the abstracts would show a marketable title; that thereupon, on the faith of said collateral agreement, the deal was closed, the cash money stipulated in the contract of sale paid, and a deed made by Mas-

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error granted by Supreme Court.

terson to Thompson, and vendor's lien notes and a deed of trust executed by Thompson for the deferred payments; that A. R. and H. Masterson thereafter used no diligence to correct the defects pointed out by the attorneys of Thompson which they had obligated themselves to correct, and never corrected them at all, and, when the first deferred payment became due, demanded its payment, which was refused by the said Thompson and his subvendees Frantz & Frantz, who had succeeded to all Thompson's rights under the purchase and contracts from and with the said Mastersons. The plaintiffs in error contended, and so set up in their petition, that the Mastersons had no right to declare the notes due or insist upon the payment of any note upon its due day, unless they had first performed their undertaking set out in their collateral agreement upon which the trade was so speedily closed, that the proposed trustee's sale was unjust and inequitable, and they appealed to the court to grant a writ of injunction restraining the sale until the said Mastersons. should perform their undertaking embodied in the collateral agreement.

"A temporary injunction was granted and the sale restrained. Whereupon H. Masterson, who had become the owner of all the deferred obligations, except certain obligations assumed by the said Thompson and which had not yet become due, reconvened in said cause, and asked a judgment and foreclosure of the vendor's lien on the deferred payments. Upon a hearing the trial court dissolved the temporary injunction, and rendered judgment in favor of H. Masterson on the notes held by him, and foreclosed the lien by which they were secured, rendering judgment thereon against the plaintiff in error George C. Thompson, and his coplaintiffs in error, Frantz & Frantz, who in their purchase from Thompson had assumed all his obligations and become subrogated to all his rights. The said H. Masterson had also set up that default had been made in the payment of said notes according to their terms, and under the provisions of said notes and deed of trust he was entitled to collect 10 per cent. of the amount of the principal and interest due thereon as attorney's and collection fees, alleging in this connection that he had placed the notes for collection in the hands of Elliott Cage, an attorney at law, and had agreed with him at the time of placing said notes in his hands for collection that he, the said Masterson, would pay to the said Elliott Cage 10 per cent. on the face of his recovery of said notes as attorney's fees.

"The trial court in rendering a judgment dissolving the temporary injunction, and for foreclosure, rendered a judgment in favor of the said H. Masterson for 10 per cent. attorney's fees, as stipulated in said note, amounting in the aggregate to about $20,000. The court, having theretofore sustained a general demurrer and special exceptions to plaintiffs' original petition and supplemental petition, found in his conclusions of law and facts that the sum of 10 per cent. of the amount recovered was not a reasonable attorney's fee, but that $3,000 was a reasonable fee for the labor and work performed, but that, in view of the decisions upon the point in Texas, he felt compelled to render a judgment for attorney's fees for the full amount of 10 per cent. of the amount of principal and interest because H. Masterson had actually contracted with his attorney for the 10 per cent. stipulated in the note, and had made himself liable to the said attorney for that sum. He therefore rendered judgment for the amount sued for and 10 per cent. attorney's fees."

The plaintiffs in error made the point that the contract for attorney's fees was merely a contract for reasonable compensation for the expenses of the holders of the notes in procuring judgment and foreclosure, and that the holders had no right, as against plaintiffs in error, to make a contract for a larger sum than a reasonable attorney's fee, and this notwithstanding the stipulation in the notes for 10 per cent., and, further, that if it should be true, in any case, that the defendants in error could, acting upon the face of the contract, make an agreement with their attorney for 10 per cent., estopping the plaintiffs in error from questioning that amount as reasonable, that no pleadings had been filed presenting the issue of estoppel, and that judgment ought not to be rendered for any greater sum than a reasonable attorney's fee. The court rendered judgment nevertheless, as stated, and the plaintiffs in error have brought the case to this court on writ of error for review. There is no statement of facts; the cause being before this court on the trial court's conclusions of fact and law.

Plaintiffs in error's first assignment of error complains of the action of the court in sustaining defendants in error's general demurrer to their amended original petition. The petition discloses that, at the time George C. Thompson purchased the land, accepted the deed, and executed his vendor's lien notes therefor, he was well aware of certain defects in the title of a few parcels of the many that went to make the 50,000 acres embraced in and conveyed by the deed, and that he closed the deal without requiring such defects to be first cured, relying upon the collateral agreement of the Mastersons to thereafter cure the same. There was no allegation that the title to any of these tracts had failed in whole or in part, and the petition negatives that the vendees had been evicted therefrom, nor was a rescission of the contract prayed for, nor was there any offer to pay to defendants in error the notes in the proportion that the number of acres the title to which was claimed to be defective bore to the total number con-

reyed, nor was an abatement of the purchase price asked. The deed conveying the land contained covenants of general warranty and was an executed contract (Ogburn v. Whitlow, 80 Tex. 240, 15 S. W. 807), and it has been held that, before the purchaser under an executed contract for the sale of land can resist the payment of the purchase money, he must show that he purchased in ignorance of defects in the title, or that the title is wholly defective, or that there was a valid outstanding title in others, that, where there clearly was no title in the vendor, the purchaser is not compelled to pay, and then, after eviction, seek his remedy on the convenants of the deed. The rule in such case is based upon such failure of title as exposes the vendee to the danger, or ·in fact to the certainty, of eviction. Cooper v. Singleton, 19 Tex. 200, 70 Am. Dec. 333; Carson v. Kelley, 57 Tex. 379; Ogburn v. Whitlow, 80 Tex. 241, 15 S. W. 807; Fagan v. McWhirter, 71 Tex. 569, 9 S. W. 677; Groesbeck v. Harris, 82 Tex. 416, 19 S. W. 850; Brown v. Montgomery, 89 Tex. 253, 34 S. W. 443; Earl v. Marx, 80 Tex. 42, 15 S. W. 595.

The collateral contract executed by defendants in error at the time of the execution and delivery of the deed and notes was in effect that they would furnish affidavits of possession, of the payment of taxes, and of heirship, and that they would meet all the objections to the title pointed out by the attorney of plaintiffs in error. This agreement, if it could modify to any extent the rule laid down in Cooper v. Singleton, and the other· cases cited above, was not sufficient, in view of the state of the pleadings, to authorize the court by injunction to prevent the collection of all the notes, while the plaintiffs in error at the same time withheld from the vendors the possession of the land, and while thus holding possession postpone indefinitely any efforts of defendants in error to collect the whole or any portion of the amount of said notes. Suppose, instead of showing that the title to the part of the land was defective, it had been alleged that the vendees had suffered eviction from that part, could it be held in such case that a court of equity should enjoin the vendors from collecting the purchase money for the balance, the title to which was indisputably good? We think not. Yet this would be the effect of such an injunction as was prayed for had it been granted in this case. Nor do we think the allegation that it was the understanding of the parties that. the vendees and immediate subvendees were relying upon an immediate sale of the land for the purpose of securing money to meet the payment of the notes, and that the collateral agreement was demanded in view of that necessity require or justify the court, in view of all the allegations of the petition, to grant the injunction prayed for. We conclude that the general demurrer was properly sustained.

What we ·have said above disposes of the second and third assignments adversely to the contention of the plaintiffs in error.

The fourth assignment complains of the action of the court in sustaining a general demurrer to the amended supplemental petition of plaintiffs in error. As before shown, H. Masterson, who had become the owner of all the deferred obligations except certain of those that had been assumed by Thompson, reconvened in the injunction suit and prayed for judgment upon the notes and for foreclosure of the vendor's lien on the land. He alleged that default had been made in the payment of the notes according to their terms, and under the provisions of said notes and the trust deed securing the same he was entitled to collect 10 per cent. of the amount of the principal and interest due thereon as attorney's and collection fees, and that he had placed the notes in the hands of his attorney for collection, and at said time agreed with his attorney to pay him 10 per cent. on the face of the recovery of said notes as attorney's fees, and he prayed for judgment for this amount in addition to the amount of principal and interest due upon the notes. In answer to the plea in reconvention, the plaintiffs in error pleaded a general denial, which was sufficient to put H. Masterson upon proof of the allegations of his cross-bill, and, in addition, they specially denied that the attorney's and collection fees prayed for were reasonable. and alleged that three per cent. of the amount involved would be ample. They further specially pleaded other defenses which are not necessary to be here stated. The judgment recites that the demurrers and exceptions urged by the defendants against the plaintiffs' amended original petition and supplemental petition and reply to the cross-bill of H. Masterson were sustained. If the demurrer was in fact sustained to so much of the supplemental petition as denied the allegations of the cross-bill, we think an error was committed, but we hardly think in view of the entire record that it was in the mind of the court to, or that he did in fact, sustain any exception to the general denial or to the allegation that the 10 per cent. which was sought'to be recovered as attorney's fee was unreasonable. An examination of the record fails to disclose that any demurrer or exception whatever was urged by defendants to plaintiffs' supplemental petition. Furthermore, the court heard proof upon the question of reasonableness of the attorney's fee, and made an express finding of fact thereon. In· view of all this, we are constrained to hold that, in the absence from the record of any demurrer or exception to the supplemental petition, the recital in the judgment that the demurrers and exceptions were sustained had reference to the demurrer and exceptions to the amended original peti-

tion praying for an injunction and not to the supplemental petition filed in reply to the cross-bill, or, at least, to so much of it as contained a general denial and denial of the reasonableness of the attorney's fees. The assignment and propositions thereunder cannot be sustained.

This brings us to a consideration of the only remaining question presented on this appeal, which is urged by the fifth and eighth assignments, which are as follows:

"The court erred in rendering judgment against plaintiffs in favor of defendant H. Masterson on his cross-bill for attorney's fees in the full amount of 10 per cent. of the principal and interest of the notes sued on, and amounting to over $20,000, in addition to said principal and interest. The court, having found as a fact in his conclusions of fact that the sum of $3,000 was a reasonable fee for the services of defendant's attorney in this cause, erred in embodying in his judgment more than that sum as attorney's fees."

"The court having found in his conclusions of fact that $3,000 was a reasonable attorney's fee for the services of the attorney, Elliott Cage, in behalf of the defendants in this cause, it was error to render judgment for 10 per cent. of the principal and interest of the obligations sued on by defendant H. Masterson as compensation to his said attorney for his services in the matter of the collection of the notes sued on and the foreclosure of the lien by which they were secured."

Each of these assignments is presented as a proposition, and, in addition thereto, it is urged that the judgment of the court must legally follow and conform to the facts found in the court's conclusions of fact, and, having found as a fact that $3,000 was a reasonable attorney's fee for procuring the judgment and foreclosure, it was error for the court to render judgment for a larger sum. Plaintiffs in error pleaded that the 10 per cent. sought to be recovered as attorney's fees was unreasonable and excessive. The court rendered judgment for attorney's fees in the full sum of 10 per cent. of the principal and interest due on the notes sued on. The principal and interest of the notes aggregated about $228,-000. The total of the judgment rendered by the court was $252,003.30. It will be seen from this that the amount allowed for attorney's fees, and for which judgment was rendered was more than $20,000.

The court's findings of fact on this issue are as follows: "From the testimony of Elliott Cage, the attorney, I deduce the findings of fact, as it is undisputed, that Judge Masterson promised, without reservation, to pay him 10 per cent. upon the amount of the judgment, and there was no statement about that sum being dependent upon it being got-

ten out of the note. Nor was his fee to be dependent upon getting it out of the land. I deduce from the testimony of Judge Masterson, who is the father-in-law of Mr. Cage, that he was to pay Mr. Cage 10 per cent. on the amount of the note, whether he got the money or the land; that, if he did not buy the land in at the sale, it was his fault; that his reason for making the promise was that the land had been sold at a profit of something like $200,000, and he felt sure it would be perfectly safe to purchase it. From other testimony adduced as to the reasonableness of the fee, apart from the matter of contract, I conclude that $3,000 as a maximum would be a reasonable fee under all circumstances."

The court's conclusions of law based upon the finding of facts are: "That, inasmuch as the notes provided for 10 per cent. attorney's fees, I do not see how, in view of the holdings of the courts, I could render any judgment except according to the letter of the contract, and for that reason render judgment as per the terms and figures in the decree, which, according to the decisions, controls, rather than the reasonableness of the fee." The correctness of the court's conclusions of law upon this issue is sustained by the following decisions rendered by this court: Dunovant v. Stafford, 36 Tex. Civ. App. 33, 81 S. W. 101; Bolton v. Gifford, 45 Tex. Civ. App. 140, 100 S. W. 210; First National Bank v. J. I. Campbell Co., 114 S. W. 887. This court is committed to the proposition that where notes containing stipulations for the payment of 10 per cent. attorney's fees in case the same are placed in the hands of an attorney for collection after maturity are so placed, and the creditor contracts with his attorney to pay him such a sum, the debtor cannot, in the absence of fraud or collusion, defeat the collection of this amount on the ground that it was unreasonable.

We do not think, as contended by plaintiffs in error, that it was necessary for the creditor in such case, after showing that he had contracted to pay the 10 per cent. to his attorney, to plead that the contract was made on the faith of the stipulation for attorney's fees, and that for that reason the debtor was estopped to question the reasonableness of the fee. We find no reversible errors in the record, and the judgment of the court below is affirmed.

Defendants in error suggest that this appeal was made for the purpose of delay only, and they ask that the judgment be affirmed with 10 per cent. damages for delay. We cannot agree with defendants in error, in view of the questions presented by the record, that the appeal is only for delay, and their prayer for damages is refused.

Affirmed.