## PIERCE OIL CORPORATION v. GILMER OIL CO. (No. 1808.)

(Court of Civil Appeals of Texas. Amarillo. April 27, 1921. Rehearing Denied May 25, 1921.)

1. **Sales ⬦23(4)—Offer of contract for purchase of oil held accepted.**

Where the purchasing agent of an oil company verbally acknowledged receipt of a letter accepting his offer to buy the output of a certain oil field and without making objection to any modification of the offer stated that "it was all right," a contract was made; it being immaterial that the seller's letter contained a counter proposition modifying the original offer.

2. **Contracts ⬦22(1) — Silence may be considered in determining question of assent.**

While silence does not often constitute assent, it may, coupled with other circumstances, have some weight in ascertaining the conclusion to be drawn from the other acts of the party charged with having given the assent.

3. **Sales ⬦32—Oil purchase agreement held not dependent upon formal execution of contract, where correspondence was definite.**

Where letters between the buyer and seller of oil, in connection with an existing contract referred to in such letters, left no terms of the agreement open except possibly the date of termination, and a conversation settled such term, the conclusion was justified that it was not the parties' intention to make the existence of the agreement dependent upon formal execution of a contract.

4. **Contracts ⬦32—Failure to prepare formal contract does not prevent agreement from being valid.**

Although parties may have contemplated that as a matter of convenient preservation of evidence of the agreement, a formal contract should be prepared and signed, this does not prevent the contract actually made and contained in correspondence between them from being a completed contract.

5. **Evidence ⬦80(1)—Interest laws of New York presumed the same as laws of Texas.**

It will be presumed, in the absence of pleading and proof to the contrary, that the law and interest rates of the state of New York where a contract was made are the same as in the state of Texas.

6. **Damages ⬦68—Interest on damages from buyer's breach held recoverable.**

Interest on damages caused by buyer's breach of an oil purchase contract are recoverable as an element of damages.

7. **Interest ⬦50—Insufficient tender does not reduce amount recoverable.**

A tender of payment not accepted cannot reduce the amount of interest recoverable from the purchaser under an oil purchase contract, where the amount tendered was not the full amount then owing, so that the seller was not bound to accept it, and where it was not shown that the tender was kept good.

8. **Interest ⬦39(1) — Sales ⬦384(2) — On purchaser's breach of oil contract seller may recover damages as of such date; interest begins to run from date of ascertainment of damages by resale.**

Repudiation of an oil contract by the purchaser gave the seller the right to treat the contract as breached, and where the seller did this by selling the oil to other parties the seller had the right immediately to sue for the breach and recover damages as of that date, and interest on the difference between the resale and contract price was properly allowed from that date, although under the contract the seller would not have received payment for such oil until much later dates, the purchaser's acts having made necessary an antecedent ascertainment of the damages.

9. **Trial ⬦68(1)—Evidence may be introduced after argument.**

There was no reversible error in the action of the court permitting plaintiff to recall a witness and allowing him to testify regarding a conversation already detailed, although the evidence and argument by both sides had been closed.

Appeal from District Court, Grayson County; Silas Hare, Judge.

Action by the Gilmer Oil Company against the Pierce Oil Corporation. Judgment for plaintiff, and defendant appeals. Affirmed.

Capps, Cantey, Hanger & Short, of Fort Worth, Wolfe & Freeman, of Sherman, and Cunningham, McMahon & Lipscomb, of Bonham, for appellant.

Head, Dillard, Smith, Maxey & Head, of Sherman, for appellee.

BOYCE, J. For several months prior to January 5, 1919, the Pierce Oil Corporation had been purchasing all of the oil output of the Gilmer Oil Company from the Healdton field in Oklahoma, under a contract dated August 2, 1918, which provided for such purchase and fixed the prices, terms, etc., but which provided that it was terminable by either party on five days' notice. On January

5, 1919, R. L. Steiner, the purchasing agent of the Pierce Oil Corporation, who had authority to make contracts for it, wrote the following letter to the Gilmer Company:

"As the United States Fuel Administration has removed all the restrictions on the oil industry, we would like to know whether you would be willing to let us have your oil in the Healdton field on the same terms and conditions as we are taking your oil now for a period of three or six months. We hereby offer you a firm contract (meaning one not subject to cancellation) to take all the oil that you may produce in the Healdton field for this period, as we would like to know what oil we can depend on in the Healdton field. This offer remains open until February 10th for your acceptance."

On February 6, 1919, the Gilmer Company replied:

"We hereby accept your offer, dated January 5, 1919, agreeing to take our production in the Healdton field on the same terms and conditions as our present contract, to wit: The oil to be gauged 100 per cent., no reduction for B. S., or water; one cent per barrel for pumping and one cent per barrel for the use of our lines and payment of thirty cents per barrel premium over the Magnolia posted price. Kindly make out contract and send same to me for execution. This contract to be for six months from January 1, 1919."

The letter was signed by S. J. Hernstadt, president of the Gilmer Company. This letter was received by Steiner, but was not answered. About a week after it was written Hernstadt, in a personal interview with Steiner, inquired as to whether the letter had been received. Steiner said that it had been, and that it was all right, and that he would send it in to the Pierce Company in New York. On February 26, 1919, Clay Arthur Pierce, as vice president of the Pierce Corporation, gave the Gilmer Company notice that the contract of August 2, 1918, would be canceled at the expiration of five days. The agents of the Gilmer Company took the matter up with the said Pierce, who claimed that he had no information as to the existence of any such contract, as evidenced by the letters set out above. The controversy between the parties as to the existence and binding obligation of such contract was prolonged until about the 1st of April, when the Pierce Corporation finally repudiated any obligation under such contract. The oil runs from the Gilmer Company's field at Healdton for the month of March were delivered to the Pierce Corporation. The price to be paid for oil delivered under the old contract, as well as the new, was 30 cents per barrel premium over the Magnolia posted price, which during the month of March was $1.20 per barrel. The Pierce Corporation tendered to the Gilmer Company payment of the oil run during the first half of the month of March, at the rate of $1.20 per barrel. This was refused by the Gilmer Company and no payment for the oil runs of March was ever made to or accepted by the Gilmer Company. About the 1st of April the Gilmer Company contracted to sell the oil produced from the field during the months of April, May, and June, to other parties at the best price obtainable, which was considerably lower than what it would have received under the contract with the Pierce Corporation. This suit was brought by the Gilmer Company to recover the contract price of the oil delivered to the Pierce Corporation during March and the difference between amounts received from the sale of its oil for the months of April, May, and June and the amount it would have received under the contract with the defendant. The trial was without a jury, and the court entered judgment for the plaintiff for the sum of $50,339.25.

[1] The principal claim of error made by appellant is that the evidence is insufficient to establish a contract between the parties; and as part of this general contention it is urged that the letter of February 6th is not an acceptance of the defendant's offer of January 5th, but a modified offer on the part of the Gilmer Company, because an unconditional acceptance of the offer made by the Pierce Corporation would have meant a contract ending three or six months from the date of the contract, while the acceptance provided for a contract ending six months from January 1st, and the evidence is insufficient to show any acceptance of the modified offer by the Pierce Corporation. We do not find it necessary to determine whether the proposition contained in the letter of February 6th, to make the contract end July 1st, was a material variance of the offer made by the Pierce Corporation, because we think that in any event the verbal acknowledgement of the receipt of the letter by Steiner and his statement that "it was all right" warranted the trial court in finding that—

"Steiner accepted said letter as an acceptance of his letter of January 5th, and that the two letters made a contract from January 1st to July 1st."

If the letter of February 6th be held to be a counter proposition, yet if the modification of the offer, as contained in it, were acceded to by the other party, a contract would result. Diamond Mill Co. v. Adams-Childers Co., 217 S. W. 176; Page on Contracts (2d Ed.) § 184, p. 267; Elliott on Contracts, §§ 43, 47.

[2] Silence does not often constitute assent, but it may, coupled with other circumstances, have some weight in ascertaining the conclusion to be drawn from the other acts of the party charged with having given the assent. Page on Contracts (2d Ed.) § 161;

Elliott on Contracts, § 48. The statement by Steiner as to the receipt of the letter, in connection with his statement that it was all right, with no objections before or after to any modification of the offer, in the letter of acceptance, when the circumstances naturally suggested that some objection should be made, if any existed, is sufficient to support the finding of the court that the said Steiner did assent to the terms of the letter of February 6th. Page on Contracts, § 161; Elliott on Contracts, § 48; Bartlett v. Doyle, 161 Wis. 624, 155 N. W. 125; Minneapolis Threshing Machine Co. v. Zemanek, 130 Iowa, 120, 106 N. W. 512.

[3, 4] It was also claimed that there was no complete contract, because no formal contract was prepared and executed, as requested by the Gilmer Company, in the letter of February 6th. The letters of January 5th and February 6th, in connection with the existing contract referred to therein, left no terms of the agreement open, except possibly that of the date of the termination of the contract. The conversation between Steiner and Hernstadt settled this term also, and the evidence we think fully justified the conclusion that it was not the intention of the parties to make the existence of the contract dependent upon the formal execution of a contract, embodying the terms upon which they had fully agreed. The parties may have contemplated that as a matter of convenient preservation of the evidence of the agreement a formal contract would be prepared and signed, but this did not prevent the contract actually made from being a completed contract. International Harvester Co. v. Campbell, 96 S. W. 97; Walker Grain Co. v. Denison Co., 178 S. W. 555; Page on Contracts (2d Ed.) 213; Elliott on Contracts, § 63. The authorities cited discuss this question at length, and we need not review them here. The conclusion reached by Mr. Elliott is thus stated:

"The controlling question in this class of cases is whether or not there is a final consent of the parties, such that no new terms or variation can be inserted in the formal writing to be prepared."

The trial court's conclusion as to such question is, we think, sufficiently supported by the evidence.

[5, 6] The second assignment presents the contention that the contract was a New York contract, made by letters written and received in New York, and that it was error to allow the Oklahoma or Texas rate of interest, 6 per cent., in determining the amount of recovery. The letter of January 5th appears to have been written from New York, and is addressed to the Gilmer Oil Company in New York. It is not clear whether the reply was written from New York or not. It was addressed to Steiner at Dallas, Tex. Steiner had an office at Dallas, and Hernstadt's oral conversation with him was at that place. Both the Pierce Oil Corporation and the Gilmer Oil Company had permits to do business in Oklahoma. The oil was to be delivered in Oklahoma. We are not referred to any evidence as to the place of payment. There was evidence as to the interest rate in Oklahoma, the legal rate being 6 per cent., and also evidence to the effect that under the law of Oklahoma interest would be allowed as damages on such a claim in that state. There was no pleading or evidence as to the law of New York or the legal interest rate of such state. Even if it be true that the contract is a New York contract, still it will be presumed, in the absence of pleading and proof to the contrary, that the law of that state and its interest rate are the same as that of Texas. Ogg v. Ogg, 165 S. W. 912; R. C. S. 3709. Such interest would be recoverable as an element of damages under the laws of this state. Watkins v. Junker, 90 Tex. 584, 40 S. W. 11; H. & T. C. Ry. Co. v. Jackson, 62 Tex. 215. It is unnecessary to determine whether under the facts the contract was to be so executed in Oklahoma as to make the laws of that state controlling in the determination of the rights of the parties.

[7] The tender of payment made by the Pierce Oil Corporation for the March runs of oil at $1.20 per barrel, which was not accepted, cannot reduce the amount of interest recoverable because the amount tendered was not the full amount then owing, and plaintiff was not bound to accept it; and, besides, it is not shown that the tender was kept good. Bolton v. G. C. Gifford & Co., 45 Tex. Civ. App. 140, 100 S. W. 210; State v. Hoffman, 109 Tex. 133, 201 S. W. 653.

[8] There was included in the judgment the sum of $13,339.27, the difference in the price received for the oil run during April, May, and June, from the resale thereof, and the price plaintiff would have received from the defendant company under the terms of the contract sued on, and interest was allowed on this amount at the rate of 6 per cent. from April 1, 1919. Under the fourth assignment it is contended that it was error to allow interest from such date, because the plaintiff would not, under the contract, have received payment for such oil until much later dates. It appears that it was the custom of the defendant to make semimonthly payments for oil delivered to it, paying for oil run during the first half of the month on the 25th of the month, and that run during the last half of the month on the 10th day of the succeeding month; and under this assignment the appellant contends that the interest allowed as damages on this claim should be computed from the respective dates during April, May, June, and July, that payments would have been received by plaintiffs.

In this connection, it should be further stated that soon after the repudiation of the contract by the Pierce Oil Corporation, the Gilmer Oil Company made a contract with the Ohio Cities Gas Company, for the sale of said oil to the said last-named company, and did deliver said oil to said company during such time, under said contract, and received pay therefor. The contract was breached by its repudiation by the Pierce Oil Corporation, about April 1st. The plaintiff had the right to accept the repudiation as a breach. It did this by making the contract for the sale of the oil to other parties, and had the right immediately to sue for the breach, and recover its damages. Texas Seed & Floral Co. v. Chicago Set & Seed Co., 187 S. W. 747. Plaintiff's cause of action for the damages thus accrued at the time of the breach, and it was entitled to its damages as of that date.

"Nor can any weight be attached to the suggestion that by this means the plaintiffs get the use of the money before the date called for by the contract. By his own acts he [the defendant] made necessary an antecedent ascertainment of the damages, and is bound to accept the situation caused by his own wrongdoing." Roehm v. Horst, 91 Fed. 349, 33 C. C. A. 550.

To the same effect, see the concluding portion of the opinion of the Supreme Court of the United States in the same case, 178 U. S. 21, 20 Sup. Ct. 780, 44 L. Ed. 961. In this case the plaintiff had brought his suit to recover the damages before the time when the goods would have been delivered under the contract, and he would have received payment therefor, and it was held in effect that upon breach of the contract the plaintiff was entitled to the payment of his damages, which included profits which he would have made in the transaction immediately, notwithstanding he would not have received payment of such profits under the contract until a later time. We think this assignment should be overruled.

[9] No reversible error appears in the action of the court in permitting the plaintiff to recall the witness Hernstadt and permit him to testify as to the conversation with Steiner already detailed, this evidence being introduced after the evidence had been closed and "after argument by counsel on both sides had closed." Meyers v. Maverick, 28 S. W. 716; Western Union Tel. Co. v. Roberts, 34 Tex. Civ. App. 76, 78 S. W. 522; Puckett v. City of Ft. Worth, 180 S. W. 1115.

We find no reversible error assigned, and the case will be affirmed.