## PRINCE v. BLISARD. (No. 9020.)

(Court of Civil Appeals of Texas. Ft. Worth. Feb. 22, 1919.)

1. PLEADING   ⬥⟹18—INDEFINITENESS—DAMAGES—BREACH OF CONTRACT FOR LEASE.

In action for breach of contract for farm lease, paragraph of complaint, alleging as damages what plaintiff would have saved in living expenses by occupying the farm, *held* not sufficiently specific to, enable defendant to be prepared to meet such allegations with controverting evidence, and subject to special exceptions.

2. CONTRACTS   ⬥⟹32—ORAL NEGOTIATIONS—WRITTEN CONTRACT.

Where it was understood and intended by the parties negotiating orally that a written contract was to be entered into to bind the parties, there was no contract between the parties.

Appeal from District Court, Tarrant County; R. E. L. Roy, Judge.

Action by W. L. Blisard against J. S. Prince. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

R. S. Phillips, of Ft. Worth, and S. C. Padelford and F. E. Johnson, both of Cleburne, for appellant.

---

⬥⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Mays & Mays and John L. Poulter, all of Ft. Worth, for appellee.

DUNKLIN, J. J. S. Prince has prosecuted this appeal from a judgment rendered in favor of W. L. Blisard for the breach of an alleged parol contract for a lease by Prince to Blisard of a farm consisting of 300 acres of land situated in Johnson county, Tex., for the year 1917. The proof showed that there were some negotiations between the parties relative to the leasing of the land for the year 1917, but later Prince refused to permit Blisard to have it. ·The case was tried before a jury, who returned findings upon special issues.. According to those findings Prince did rent the'farm to Blisard for the year 1917, and by reason of defendant's breach of same, plaintiff sustained damages, which were itemized by the jury, and which damages aggregated the sum of $4,195 over and above the amount plaintiff and his family could reasonably have earned in the pursuit of occupations other than the cultivation of the farm.

One paragraph of plaintiff's petition, upon which the case was tried, reads as follows:

"Plaintiff shows to the court that had he been permitted to have used and occupied said farm as aforesaid, that he would have raised a garden thereon, and that such garden would have furnished plaintiff and family food, and that he would have also raised and grown his own meat; that also in accordance with the contract and agreement that. defendant would have had to furnish plaintiff a sufficient number of milk cows, thereby reducing the costs of plaintiff's and family living for the year 1917 at least $300, and that on breach of such contract, plaintiff has been forced and compelled to expend at least the sum of $300 additional as living expenses, consisting in the purchase of milk, butter, groceries and vegetables, and that said sum of $300 was and is a reasonable sum therefor in addition to what he would have made in that respect upon said farm."

The verdict of the jury shows a finding that the living expenses, incurred by Blisard over and above what such expenses would have been had he been permitted to occupy the farm, amounted to $300. A special exception was addressed to the paragraph of the petition, copied above, because the same was indefinite and uncertain and failed to specify ·any items, or to give any data to justify the conclusion alleged that his living expenses during the year would have been reduced the sum of $300 had he been permitted to occupy the farm. And defendant excepted to that allegation of damages on the further ground that the same constituted special damages, and the petition contained no allegation sufficient to show that the same were within the contemplation of the parties at the time the alleged contract was entered into as a probable conse-quence of a breach thereof by the defendant, Prince.

[1] Clearly, plaintiff could not have "grown his own meat" without incurring some expense in so doing, and even though defendant had furnished him cows to milk he would have been at some expense to feed them in order for them to produce milk and butter for his family. Even though it be supposed that the pleader intended to say that more groceries were required for his family during the year than would have been required had he resided on the farm, yet it is clear that such as he would have used on the farm would have cost the same price. The defendant was entitled to more specific allegations of facts with reference to the damages claimed in that paragraph of the petition in order to be prepared to meet the same with controverting evidence, and the trial court erred in overruling the special exceptions.

And the same observations apply to special exceptions to other portions of plaintiff's petition in which other items of damages sustained by him were alleged, but we deem it unnecessary to discuss such exceptions at length, since, with what we have said already as a guide, the trial court will experience no difficulty in correctly determining their merits if insisted upon by the defendant in the further progress of the case in that court.

In his testimony the defendant denied that he made the rental contract alleged in plaintiff's petition. He did testify to certain negotiations between the parties looking to a possible trade, but according to his testimony such negotiations never reached the stage of consummation of a contract. Plaintiff testified at length to several interviews with the defendant relative to said proposed rental contract, of propositions and counter propositions of each party relative thereto, and while, according to certain isolated portions of his testimony, a definite agreement was reached, yet, according to other portions of his testimony, it was contemplated by both parties that the contract was to be reduced to writing, and he himself was unwilling to rent ·the farm except under a written contract from the defendant, by reason of the fact that he had been informed that defendant was a very mean man. And with reference to what occurred in the final interview between them when defendant refused to let him have the farm and all further negotiations were terminated, plaintiff testified as follows:

"I wanted a written contract, but that wouldn't necessarily make a man afraid to take it; it was understood the day I entered the place that we were to sign a written contract. It was understood between Mr. Prince and I the day we closed the trade at his barn, about the 20th of October, that we would both enter into a written contract, and we were to meet down there, and he was to tell me what I was

to do about the Johnson grass, and I was to tell him what to do about the house, so we could put that in the contract. The things that had to go into the contract were things that had to be agreed upon between us. Yes; I wanted that contract so I wouldn't have any trouble about it, and I suppose he wanted it so that he wouldn't have any trouble about it; that is what you have a contract for."

[2] If plaintiff understood and intended, as indicated by his testimony, that a written instrument was necessary in order for the oral negotiations between the parties to ripen into a valid and binding contract for the lease of the farm, then it is clear that no binding contract whatever was ever made between the parties. 6 R. C. L. p. 18, § 39.

The burden was upon the plaintiff to establish by proof a definite contract for the rental of the farm, and we are of the opinion that his testimony, considered as a whole, was too indefinite, to say the least, to sustain a finding that the alleged rental contract was in fact made; and in this connection it is to be observed further that according to plaintiff's testimony nearly all the negotiations between the parties occurred when no one else was present who could testify as to what then occurred.

For the reasons indicated, and without reference to other assignments of error, the decision of which is unnecessary, the judgment is reversed, and the cause is remanded for another trial.