DIAMOND MILL CO. v. ADAMS-CHILDERS CO. (No. 6102.)

(Court of Civil Appeals of Texas. Austin. Nov. 26, 1919. Rehearing Denied Jan. 7, 1920.)

1. CORPORATIONS ⚹503(1)—ACTION AGAINST SELLER CORPORATION TO BE BROUGHT IN COUNTY WHERE NEGOTIATIONS WERE CARRIED ON.

Under the statute authorizing venue in action against corporation to be laid in county where cause of action or part thereof arose, an action against corporation seller for refusal to deliver was properly brought in county in which the negotiations for the sale and purchase of the goods were made, and the purported acceptance by buyer of seller's offer was mailed, and to which goods were to be transported, though seller was domiciled in another county.

2. CORPORATIONS ⚹503(1)—VENUE DETERMINED BY ALLEGATIONS OF PETITION.

Under the statute authorizing action against corporation to be brought in county where cause of action or part thereof arose, plaintiff, bringing action in good faith against corporation, is entitled to invoke the venue that accords with the establishment of allegations in its petition, regardless of possibility that venue may fail with the suit upon plaintiff's failure to sustain the merits of the suit.

3. SALES ⚹53(1)—WHETHER CONTRACT RESULTED FROM CORRESPONDENCE QUESTION FOR COURT.

Where the sales contract, if any, was embodied in correspondence, it was for the court to construe the correspondence and to determine whether any contract resulted.

4. CONTRACTS ⚹24—ACCEPTANCE MUST ACCORD WITH PROPOSAL.

Where it is sought to complete a contract by the acceptance of an offer, the acceptance must be in substantial accord with the proposal.

5. CONTRACTS ⚹24—COUNTER PROPOSITION NOT COMPLETING CONTRACT.

Where in accepting offer there is any material variation or deviation from the terms of the offer, no contract will result; the proposed acceptance becoming a counter proposition, unless the proposer agrees or accedes to the change in terms.

6. SALES ⚹22(4)—ORDER OMITTING TERMS OF PAYMENT NOT COMPLETING CONTRACT.

Written order for purchase of flour specifying that all conditions must be expressed in writing, stating name of seller and buyer, time within which it was to be made, stipulation as to loading and freight, the basis price and the amount purchased, but omitting to state the terms of payment, given seller's salesman following receipt of proposal from seller, specifying terms of payment, did not complete the contract.

7. SALES ⚹23(3)—ORDER SUBJECT TO SELLER'S ACCEPTANCE NOT COMPLETING CONTRACT.

Where written order blank expressly made the order subject to approval of seller, the giving of the order to seller's salesman did not close the contract; buyer being bound by such stipulation as to seller's acceptance.

Appeal from Coleman County Court; W. Marcus Weatherred, Judge.

Suit by the Adams-Childers Company against the Diamond Mill Company. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Head, Dillard, Smith, Maxey & Head, of Sherman, and Snodgrass, Dibrell & Snodgrass, of Coleman, for appellant.

J. K. Baker, of Coleman, for appellee.

BRADY, J. Appellee, the Adams-Childers Company, a corporation, instituted this suit against appellant, the Diamond Mill Company, also a corporation, for the sum of $600, afterwards increased to $800, as damages alleged to have resulted from the failure of appellant to deliver a car of flour and meal claimed to have been purchased by appellee from appellant. A plea of privilege was filed by appellant, which had its domicile in Grayson County, Tex. This plea was contested, and upon the conclusion of the evidence the court peremptorily instructed the jury to find against appellant as to venue of the case. The case on the merits was submitted to the jury on special issues, and upon the verdict judgment was rendered for appellee for the sum of $645.

The findings of the jury may be summarized as follows: That the letter hereinafter mentioned from appellant to Messrs. Adams & Childers, dated March 26, 1917, was intended by it as an offer to appellee to sell it a car of mill products, flour basis, at $9.50 per barrel; that the term "car of flour," as used in the letter, meant the same as the phrase "car of meal products," within the contemplation of appellee; that the order given by appellee to the salesman for appellant was an acceptance by appellee of the proposal made in the letter; that the salesman of appellant was not authorized by it to accept an order for a car of mill products as given by appellee, and that appellee knew at the time it gave such order that the sales-

man was not so authorized, but that appellant reserved the right to accept or reject the order; that the difference in the market price of the flour was $3 per barrel.

The contract sued upon and all material transactions connected therewith were in writing, and practically undisputed. The verdict of the jury is supported by evidence as to the issue of fact upon the meaning of the phrase "car of flour," and also as to the issues of fact with relation to the want of authority of appellant's salesman and agent, and appellee's knowledge of such lack of authority; the testimony upon these issues being indeed virtually uncontradicted.

The material facts, for the purposes of this appeal, may be stated as follows:

Appellee was a mercantile concern doing business in the town of Santa Anna, Coleman county, Tex., and had been a partnership for several years prior to this controversy, operating under the firm name of Adams & Childers. The partnership was incorporated in January, 1917, under the name of the Adams-Childers Company, and since such date there has never been any firm, partnership, or corporation at Santa Anna by the name of Adams & Childers. The incorporators and stockholders of the corporation were the former individual members of the partnership. Prior to the transactions involved in this suit appellant had frequent dealings with the partnership of Adams & Childers, which had purchased flour, meal, and other products from appellant on various occasions; and appellant knew nothing of the change from partnership to corporation, as far as the evidence shows.

There was some preliminary correspondence during March, 1917, between appellant and appellee in regard to prospective orders for flour. The first letter material to this inquiry is that of March 22, 1917, written by appellee to appellant. The letter is signed, "The Adams-Childers Company, by ————, Treasurer," and contains this statement:

"If you see fit to handle our account on fall terms, we will appreciate a line from you to that effect. However, it will be at least thirty days before we will need a car of flour."

In reply to this letter appellant on March 26 addressed a letter to "Messrs. Adams & Childers, Santa Anna, Tex.," which letter is as follows:

"We received your letter of the 22d, a few days ago, and in reply will say that we have no objection to giving you one or two cars of flour on fall terms, but the only basis on which we could quote you would be 'regular.' In other words, we would not book flour for a longer period than thirty days.

"We suggest that you book a car of flour now at the present price of $9.50 basis, since it is your idea that you will need a car within thirty days. This price will be net, thirty days, interest at 8 per cent. after thirty days.

"Of course, you do not care to book any additional cars, as about the 1st of July new wheat will be on the market and flour should be lower. When that time comes, we can talk to you about additional bookings.

"Please let us have immediate advice if the booking we mentioned above is agreeable, as we will put out a basis of $9.80 or $10.00 if cash wheat advances a few cents more.

"Yours very truly,
"HGS–J                The Diamond Mill Co."

In the same mail there were one or two letters addressed to Mr. King, the traveling salesman of appellant, sent to him at Santa Anna, in care of Adams & Childers. Mr. Adams, the secretary-treasurer of appellee, handed these letters to Mr. King, saw him open them, and noticed that one of the letters was a carbon copy of the letter of March 26th from appellant. Mr. Adams then gave Mr. King an order for a car of mill products at Santa Anna, which order was made out in duplicate, on regular order blanks used by the salesman, and a duplicate copy furnished appellee and placed in its files. This order is dated March 27, 1917, and states, in substance, that the Diamond Mill Company has sold to Adams & Childers, at Santa Anna, one car of mill products, flour basis, $9.50, with specifications to follow. It further provides that the goods were to be shipped in 30 days, f. o. b. Sherman, freight allowed to destination. There is a blank space on the order for the terms of payment, but this space was not filled out, and no stipulation is contained in the order as to the terms of payment. The order upon its face contains this provision:

"This order subject to our acceptance. Read your order, as all conditions must be expressed in writing."

There is a space for the signature of the buyer, which was not filled out, and for the signature of the salesman, which was filled out with the name "King." This order was placed in the mails by Mr. King at Santa Anna, and was received by the appellant at Sherman.

The letter of March 26th from appellant to Messrs. Adams & Childers is claimed by appellee to have constituted a specific proposal from appellant, and the order of March 27th is claimed to have been an acceptance of the proposal; and these two instruments are relied upon as constituting the contract upon which this suit is based.

The next step in the correspondence was a letter, dated March 30, 1917, addressed by appellant to Adams & Childers, acknowledging receipt of the order of March 27th. In this letter it was stated, in substance, that if it was appellee's understanding and agreement to pay for this order in 30 days, or take a cash discount of 1 per cent., appellant would accept the business. They requested an immediate reply upon this point, urging that flour and wheat were advancing every day.

The testimony, however, shows that this letter was not received by appellee.

On April 7th appellee received from appellant a letter dated April 6th, addressed to Adams & Childers, in effect calling off the negotiations for the sale, upon the ground that appellee had not replied to the letter of March 30th, requesting appellee to expressly signify its acceptance of the terms of payment. There was no further correspondence until April 19, 1917, when appellee sent appellant a letter requesting immediate shipment of a car of flour and meal, and referring to the booking made in the order of March 27th, and referring also to appellant's letter of March 26th, and further stating that, if appellant desired, it could ship with bill of lading attached.

The testimony adds nothing of materiality to this correspondence in the verbal transactions between the soliciting salesman and appellee, except, perhaps, that when Mr. King, the soliciting salesman, took the order, nothing was said to him about the terms of payment.

### Opinion.

The various assignments of error raise substantially but three questions, which are: First, that the court should not have peremptorily instructed the jury to find against appellant on its plea of privilege, but should have peremptorily instructed for appellant; second, that there was no acceptance of appellant's proposal, and no complete or binding contract effected between the parties; and third, that the alleged proposal made by appellant for the sale of the flour was not made to the appellee, the corporation, but was made to the partnership of Adams & Childers, and that an acceptance by the corporation did not bind appellant.

[1] Upon the question of venue we hold that the trial court did not err in peremptorily instructing against appellant. Negotiations for the sale and purchase of the flour were principally made in Coleman county; the purported acceptance in the order given by appellee was mailed at Santa Anna, Coleman county; the goods were to be transported to and delivered in Coleman county; and the alleged breach of the contract was the refusal to deliver. In a suit against a corporation the statute authorizes the venue to be laid in the county where the cause of action, or a part thereof, arose, and we have no doubt that the cause of action alleged arose, at least in part, in the county where the suit was brought. See Cuero County Oil Co. v. Feeders' Supply Co., 203 S. W. 79, and authorities there cited.

[2] Upon the question of venue it is immaterial that appellee may have failed to sustain the merits of its suit; in other words, to prove a complete and binding contract. The very question to be determined upon the merits, under the issues, was whether a contract was made. If the contract as pleaded were proven, appellee had the right to lay the venue in Coleman county, where a part of its cause of action arose. If it failed to prove a contract, it would not be a case requiring the suit to be transferred to the domicile of appellant for the proper venue, but would have resulted in a dismissal of the suit, or a judgment for appellant, because no cause of action existed upon which to base a suit anywhere. Upon the assumption that appellee, in good faith, brought the suit to establish the existence and breach of the contract, it must be held entitled to invoke the venue that accords with the establishment of the allegations of its petition. The question is not affected by the possibility that the venue may fail with the suit. I. & G. N. Ry. Co. v. Anderson Co., 106 Tex. 60, 156 S. W. 499. Therefore all assignments relating to the question of venue are overruled.

[3] The next question to be considered is whether there is any evidence to show that there was a complete contract made between the parties and breached by appellant. This issue was in effect submitted to the jury, but the contract, if any at all, was in writing, since it must have resulted alone from the correspondence of the parties. In this state of the case, and the evidence being undisputed, there was no issue for the jury to pass upon. It was the duty of the trial court to construe the correspondence, and to determine, as a matter of law, whether any contract resulted. It is likewise our duty to determine this question from that standpoint.

It is claimed by appellant that its letter of March 26th should not be considered as a proposal at all, but merely a part of the preliminary negotiations. There is some force in the suggestion, but we have decided to regard the letter as a specific proposal. Then the question arises: Was such offer ever accepted by appellee?

[4, 5] It is elementary in the law of contracts that, where it is sought to complete a contract by the acceptance of an offer, it must be shown that the acceptance was in substantial accord with the proposal, and that, where there is any material variation or deviation from the terms of the offer, no contract will result. In legal effect, the purported acceptance in such event becomes a counter proposition, and the contract is not closed, unless the proposer agrees or accedes to the change in terms. This is but another way of stating the familiar rule that there can be no binding contract without a meeting of the minds of the parties. In this case did the minds meet, and was a contract consummated?

[6] The letter of March 26th, relied upon as a proposal, suggested the booking of a car of flour by appellee, named the basis price, and specifically stated the terms of payment. The purported acceptance was given upon an

ordinary order blank used by appellant's salesman, who booked the goods in the usual manner. It will be noted that this order stated the name of the seller and of the buyer, the time within which shipment was to be made, the stipulation as to loading and freight, the basis price, and was for one car of mill products, with the right to later forward specifications, but it is silent as to the material and important point of the terms of payment. It is an undisputed fact·that, when the order was given, no mention of terms was made by appellee or the salesman. The order, upon its face, expressly provides that it is subject to the acceptance of the seller, and the buyer is cautioned to read the order, as all conditions must be expressed in writing. It is also undisputed that upon receipt of this order appellant wrote a letter to appellee refusing to accept the order, because it did not contain the terms of payment, and in effect requesting appellee to signify its intention to be bound by the terms in the letter of March 26th, or a cash discount. It is true that the testimony shows this letter was not received by appellee, but that is immaterial. Failing to receive any reply, appellant notified appellee that it would call off all negotiations. In these circumstances we think it must be held that there was no meeting of the minds of the parties, and that no contract resulted.

[7] There is another view to be taken of this matter. The order relied upon as constituting an acceptance was given in the usual manner and upon the customary order blank, and was given in response to the question of the soliciting salesman to appellee's representative to the effect whether he desired to book a car of flour. The order upon its face notified appellee that it was subject to the acceptance of appellant, and we think this stipulation was binding upon appellee. By its very terms it could not have the effect to close the contract without the acceptance of appellant, which, as we have shown, was never given. For this reason, also, we hold that no contract was ever completed.

It follows that the trial court should not have submitted the issue to the jury, but should have granted appellant's motion to peremptorily instruct for it; and for this reason the cause will be reversed, and here rendered for appellant.

Upon the third question raised upon this appeal, to the effect that the proposal, if any, was made to the partnership of Adams & Childers, and not to the corporation, and that the order itself purported to be a sale to Adams & Childers, and not to appellee, appellant cites cases which strongly tend to support its contention, among others. Smith v. Montgomery, 3 Tex. 199; Bank v. Hall, 101 U. S. 43, 25 L. Ed. 822; Grant v. Naylor,. 4 Cranch, 224, 2 L. Ed. 603; 13 C. J. 273, 696. In the view we take of this case,

however, it is not necessary to decide that question, and therefore no opinion is expressed upon it.

For the reasons indicated, the judgment is reversed, and rendered for appellant.

Reversed and rendered.

⊚═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes