## LIQUIDS DISPATCH LINE v. TEXAS POWER & LIGHT CO.   (No. 10176.)

Court of Civil Appeals of Texas. Dallas.
April 14, 1928.

Rehearing Denied May 12, 1928.

**1. Contracts ⊜⟩28(3)—Evidence of defendant's rejection of agreement revised by plaintiff showed minds of parties did not meet, and that no contract was made.**

In action for breach of contract to lease tank cars, evidence of correspondence in which plaintiff stipulated that, if agreement was reached, their uniform lease contract must be signed, that defendant filled in blank spaces of tentative agreement which was rejected by plaintiff, that plaintiff changed agreement as to lettering of cars and date of payment, which details were regarded as material by both parties, but changed agreement was rejected by defendant, *held* to show that parties contemplated signing formal agreement before consummating binding contract, and that minds of parties never met on same thing, and hence contract was never made.

**2. Contracts ⊜⟩15, 24—Minds of parties must meet on all points to consummate contract, and acceptance modifying offer is counteroffer, which must be accepted.**

In order to consummate a contract, minds of parties must meet on same thing, and acceptance must correspond to offer at every point, and attempted acceptance modifying terms of offer is in effect a rejection and offer in lieu of one rejected, which, to constitute a contract, must be accepted by other party.

Appeal from District Court, Dallas County; Royall R. Watkins, Judge.

Action by the Liquids Dispatch Line against the Texas Power & Light Company. Judgment for' defendant, and plaintiff appeals. Affirmed.

Renfro, Ledbetter & McCombs, of Dallas, for appellant.

Beall Worsham, Rollins, Burford & Ryburn and Allen Charlton, all of Dallas, for appellee.

LOONEY, J. The Liquids Dispatch Line, a partnership of Chicago, Ill., sued Texas Power & Light Company, a corporation of Dallas, Tex., to recover $6,600 damages for the breach of an alleged contract, under the terms of which plaintiff leased to the defendant ten tank cars for a period of one year, for which it agreed to pay a monthly rental of $95 for each car.

The corporation defended on the ground that no such contract, as alleged by plaintiff, was ever entered into between the parties. This issue presented to the court below, and presents to us, the only material question for determination.

The trial was to the court without a jury, and resulted in judgment for the defendant, from which plaintiff prosecutes this appeal.

The record discloses that for several months there was conducted between the parties a desultory correspondence looking to the making of just such a contract as alleged. A number of letters and telegrams are in the record evidencing this fact, and it seems that the parties did in fact reach an agreement in a general way, but not as to the details. It was understood that the agreement should not be binding as a contract until reduced to writing and executed, using plaintiff's form, and for this purpose plaintiff mailed a copy of their usual lease contract, containing, among others, the following paragraphs·

"Number and Kind of Tank Cars:

"That the lessor hereby leases and rents to lessee ——— steel tank cars of approximately ——— gallons capacity, each to be used exclusively in the service of lessee for the transportation of ——— in the United States and Canada only, which cars are to be lettered ——— and initialed ———."

And under the heading of:

"Rental Charge:

"The lessee shall pay as rental for each car the sum of ——— dollars per month, payable in ——— ——— advance at the office of the lessor."

After the tentative agreement was reached as above stated, and on receipt of the form of lease, defendant filled the blank spaces in the paragraphs copied above so as to read:

"Which cars are to be lettered 'Texas Power & Light Co., Waco, Texas' and initialed 'T. P. L. X.'"

And under the heading of "Rental Charge," the blanks were filled so as to read:

"The lessee shall pay as rental for each car the sum of $95 per car per month, payable in advance on or before the 10th day of each month at the office of the lessor."

---

⊜⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

After thus filling the blanks, the draft of contract was signed by defendant and mailed to plaintiff for execution. On its receipt, plaintiff declined to sign; their insistence being that the cars should be lettered, initialed, and numbered with their own letters, initials, and numbers, and that payment of monthly rentals should be on the 1st day of each month, instead of "on or before the 10th day of each month." Plaintiff rewrote the contract to conform to their position and mailed same to defendant for execution. On its receipt defendant declined to agree to the changes, refused to sign the proposed contract, and at this juncture broke off negotiations.

[1] The trial court concluded that the parties contemplated that a formal agreement would be prepared and signed before a binding contract was consummated. This conclusion, it seems, is the only reasonable one that can be drawn from the correspondence or from the nature of the contract itself. It was usual and customary for plaintiff to reduce to writing, in a formal way, their lease contracts, and for this purpose used a regular form, and, in the course of the correspondence, stipulated that, if an agreement was reached, their uniform lease contract must be signed. The contract itself is very lengthy, containing details that necessarily require a formal writing to fully express the various provisions, covenants, and promises.

The points of disagreement—that is, as to the lettering and initialing of the cars, and the date for the payment of monthly rentals —were never mentioned in the correspondence, no tentative agreement with reference thereto was made, and they were raised for the first time in the manner just above stated. That these details were regarded material matters by both parties is apparent from the position that each took with reference thereto. The trial court concluded, and we take the same view of the facts, that the minds of the parties never met upon the same thing; that all the terms of the proposed agreement were never settled; and that, consequently, a contract was never made.

[2] It is fundamental that, in order to consummate a contract, the minds of the parties must meet upon the same thing; that acceptance must correspond to the offer at every point; that an attempted acceptance, which modifies the terms of an offer, is not an acceptance, but is, in effect, a rejection, and an offer in lieu of the one rejected, which, to constitute a contract, must be accepted by the other party.

The principle of law applicable to these facts is aptly stated in 13 C. J. pp. 289–290, § 100, as follows:

"The preliminary negotiations leading up to the execution of a contract must be distinguished from the contract itself. There is no meeting of the minds of the parties while they are merely negotiating as to the terms of an agreement to be entered into. To be final, the agreement must extend to all the terms which the parties intend to introduce, and material terms cannot be left for future settlement; nor is there a binding contract where, although its terms have been agreed on orally, the parties have also agreed that it shall not be binding until evidenced by writing."

Also see International Harvester Co. v. Campbell, 43 Tex. Civ. App. 421, 96 S. W. 93, 99; Walker Grain Co. v. Denison Mill & Grain Co. (Tex. Civ. App.) 178 S. W. 555, 557; Brillhart v. Beever (Tex. Civ. App.) 198 S. W. 973, 975; Prince v. Blisard (Tex. Civ. App.) 210 S. W. 301.

We are of the opinion, and so hold, that the court below rendered a correct judgment on the facts, and the case is accordingly affirmed.

Affirmed.