**L. H. HEGAR, Appellant,**

v.

**Mrs. T. B. TUCKER, Appellee.**

No. 12764.

Court of Civil Appeals of Texas.

Galveston.

Jan. 13, 1955.

Rehearing Denied Feb. 3, 1955.

Bracewell & Tunks, Joe H. Reynolds, Roberts & Hugghins and John A. Hugghins, Houston, for appellant.

Dyess, Dyess & Jennings, A. D. Dyess, Houston, for appellee.

**HAMBLEN, Chief Justice.**

This suit was instituted in the District Court of Harris County, by L. H. Hegar, who is appellant before this Court, seeking to recover damages as against the appellee, Mrs. T. B. Tucker, for alleged breach of a lease contract covering 640 acres of land in Harris County, Texas. Appellee answered and by cross-action, sought damages against the appellant resulting from his alleged action in taking possession of a portion of the leasehold estate without the consent of appellee, and contrary to the terms of the lease contract. Trial was before a jury, which in response to special issues submitted, found that the reasonable rental value per acre of the land in controversy for rice growing for the year 1952 was $2.86; that on November 20, 1952, appellant entered upon and took possession of approximately 35 acres of the land without the consent and/or permission of appellee; and that the reasonable rental value per acre of such 35 acres was $2.86. After receipt of such verdict, judgment was entered that appellant take nothing by his suit, and that appellee have judgment for $100.10 on her cross-action.

Appellant attacks the trial court's judgment in eight points of error. For reasons which will be discussed, we are of the opinion that none of such points presents error requiring a reversal of the judgment, and all must accordingly be overruled. Appellant's points will be treated in such discussion.

The essential facts are undisputed. Appellant became the owner by purchase of the 640 acres involved on April 4, 1951. At such time, and for some years prior thereto, appellee was and had been in possession of such land as a tenant for years of appellant's vendors, N. J. Cheek and Ralph H. Cheek. Prior to January, 1952, appellant notified appellee that she had no right to plant any portion of the leasehold in rice for the year 1952, and that her doing so would render a forfeiture of the lease in accordance with its terms. Appellee admittedly ignored such notice, and after the receipt thereof, planted, cultivated and harvested during the year 1952 a rice crop upon approximately 570 acres of the land, which crop was of the value of $180,000. In his suit, appellant sought damages in an amount equal to the value of the crop harvested upon the theory that appellee's action constituted her a trespasser upon the land. Alternatively he sought damages equal to the rental value of the land for rice growing. Aside from the aforesaid undisputed facts, appellant's proof, so far as presently material, consisted of a written lease agreement between appellee and appellant's predecessors in title, dated November 15, 1948, which, for clarity, is attached as Exhibit A to this opinion. Essentially it is the appellant's contention that such instrument evidences the only lease contract existing between the litigants governing their respective rights in the land for the year 1952; that a proper construction of such instrument necessitates the conclusion that appellee had no right to plant rice upon the land during the term of the lease except during the year 1949, and then only as to 170 acres thereof; and that her action in so planting during the year 1952 constituted a breach of the lease contract giving rise to the cause of action alleged by him. The action of the trial court in overruling such contentions, and in entering the appealed from judgment, forms the basis of appellant's points of error. I, II and III. Appellant's so numbered

points are answered by appellee in four counterpoints. Essentially it is her contention, as therein variously stated, first, that the instrument identified as Exhibit A, when examined as a whole, and in the light of the circumstances attendant upon its execution, should be properly so construed as to grant appellee the right to plant rice in the year 1952, and secondly, that the evidence conclusively proves that prior to the execution and delivery of the instrument identified as Exhibit A, appellee on the one hand, and appellant's predecessors in title on the other, had entered into a binding lease agreement as evidenced by a series of letters exchanged by them, which letters either constitute the true agreement between the parties, or alternatively constitute, together with the instrument identified as Exhibit A, the agreement, or which, in any event, constitute circumstances attendant upon the execution of such instrument which conclusively prove an intention different from that contended for by appellant. Since these letters are so material to our discussion, they have been grouped in chronological order and attached as Exhibit B to this opinion.

■■ The rules of law applicable to the contentions of the respective litigants, as above set forth, appear to be authoritatively discussed in Texas Jurisprudence, under the title "Contracts", from Volume 10, page 54, Section 30, of which text we quote the following:

"§ 30. Agreement to be Reduced to Writing.—As to whether correspondence which shows that a written contract is contemplated is to be regarded as a contract in itself, or as merely preliminary negotiations, depends upon the intention of the parties as determined from the language used and the attending circumstances. Where the parties intend or agree that a contract entered into by them orally or through correspondence shall be embodied in a formal writing and signed by them before a binding agreement is consummated, there is no binding contract until this has been done,—even though all the terms of the contract may have been agreed upon. * * * But if the

parties have assented to all the terms of a contract, a mere reference to a future formal contract in writing does not negative the existence of a present contract; and if they intend that their agreement shall be effective from the time when it is made, it will be given effect from that time, though they agree or intend that a formal writing embodying its provisions shall subsequently be prepared and signed."

■ The rule as thus stated has been recognized and applied frequently by courts of this State. Pierce Oil Corporation v. Gilmer Oil Co., Tex.Civ.App., Amarillo, 230 S.W. 1116; Diamond Mill Co. v. Adams-Childers Co., Tex.Civ.App., Austin, 217 S.W. 176; Gilbert v. Texas Co., Tex.Civ. App., Beaumont, 218 S.W.2d 906; Cranfill v. Swann Petroleum Co., Tex.Civ.App., Amarillo, 254 S.W. 582; Brillhart v. Beever, Tex.Civ.App., Amarillo, 198 S.W. 973. The cited authorities clearly hold that the question of whether correspondence constitutes a contract or part of a contract, rather than preliminary negotiations without binding force until reduced to formal contract form, is one of law, in the determination of which, the court seeks to ascertain the intention of the parties.

■■ When the correspondence composing Exhibit B of this opinion is examined in the light of the rules of law stated, it seems perfectly apparent to this Court that a binding contract had been entered into between appellee and appellant's predecessors in title prior to the execution and delivery of the formal contract identified as Exhibit A. Appellee was in possession of the property involved throughout the period covered by the correspondence, as a tenant under a previous agreement. The terms upon which she was to continue such possession for the ensuing four years appear to have been completely and fully agreed upon by the parties, and the consideration payable had been tendered and accepted, all before the formal contract was delivered. A binding and enforceable contract had been entered into whether or not the more formal document had ever been executed and delivered. From all of the

circumstances, the conclusion seems inescapable that the parties intended the formal instrument to be merely cumulative of and further evidence of an agreement existing between them, rather than as superseding or altering such agreement. And when so considered, the conclusion seems equally clear that the contract between the parties contemplated that appellee was to have, as she contends, the right to plant and grow rice on all or any part of the leasehold throughout the term of the lease.

■■ In reaching this conclusion we do not intend to hold that the formal contract identified as Exhibit A, under the facts in this case, is capable only of that construction for which appellant contends. Even if that instrument alone be considered as evidencing the entire contract between the parties, the words therein must be given meaning by examining the instrument as a whole, in the light of the circumstances attendant upon its execution, for the purpose of ascertaining what the parties intended. The relationship between the parties, and the negotiations between them, if the letters be properly so considered, are most cogent circumstances attending the execution of the instrument, and are properly to be considered by the court in undertaking to ascertain the intention of the parties as evidenced by the words used. The rule that a contract should be construed more strongly against the party who drew it, and the rule that specific language will control the general terms, or the rule of ejusdem generis, so strongly urged by appellant in support of the construction for which he contends, are recognized rules of construction to be applied where intention is not otherwise ascertainable. But they can have no application where, as here, the intention of the parties is so apparent, and where their application would patently defeat rather than uphold the intention so manifested.

By points of error IV to VII, inclusive, appellant complains of the submission by the court of the issue inquiring as to the reasonable rental value of the property for rice growing in 1952, complains of the action of the court in requiring him to elect the measure of damages sought, complains of the refusal to submit his issue relating to the value of the 1952 rice crop, and the refusal to admit evidence of such value. If this Court is correct in its stated conclusions with respect to appellant's points I to III, inclusive, the error, if any, complained of in points IV to VII, inclusive, is immaterial, and such points are accordingly overruled.

■ By his point of error VIII appellant complains that the trial court erred in allowing into evidence various letters offered by appellee over appellant's objection that such letters were not proved up, self-serving, hearsay, and attempted to vary the terms of the written instrument. In his statement and argument under this point, appellant has failed to point out to this Court the letters, to the admission of which his objection and his point of error are directed. The statement and argument appear to relate to verbal testimony offered concerning the reasonable rental value of the land for rice growing rather than to various letters referred to in point VIII. It is thus impossible for this Court to identify the error complained of. Appellee, in her answering counterpoint, has apparently construed the appellant's point VIII as having reference to the letters exchanged by appellee and appellant's predecessor in title, which have been attached hereto as Exhibit B. If such be the subject matter of the stated point, it is this Court's holding that the objection to the sufficiency of the proof goes to its weight rather than its admissibility and that the evidence is not subject to the other objections made to it.

Affirmed.

### Exhibit A

"The State of Texas } Know All Men By
"County of Harris } These Presents:
"Made this 15th day of November, A.D. 1948, by and between N. Jay Cheek and Ralph H. Cheek, of Bushnell, Illinois, known herein as Lessor, and Mrs. T. B. Tucker, of Katy, Harris County, Texas, known herein as Lessee."

(The terms "Lessor" and "Lessee" shall be construed in the singular or plural number according as they respectively represent one or more than one person).

"Witnesseth, That the said Lessor does by these presents Lease and Demise unto the said Lessee the following described property, to-wit: Lying and being situated in the County of Harris, State of Texas, and being

"All of the Wm. B. Reeves Survey in Harris County, Texas, Abstract 673, being located about 12 miles Northeast of Katy, Texas, and containing 640 acres of land, more or less....

for the term of...Four (4) years... beginning the first day of January A.D.1949 and ending the first day of January A.D. 1953, paying therefor the sum of Twenty-two Hundred ($2200.00)..... Dollars, payable as follows: $550.00 annual rental, payable in advance, on the first day of January of each year, beginning January 1st, 1949. Lessee to have the right to use 170-acres of said land for rice culture in 1949 by paying Lessor Two ($2.00) Dollars per acre or $350.00 additional rental, upon the conditions and covenants following:

"First. That Lessee will well and Punctually pay said rents in manner and form as hereinbefore specified and quietly deliver up said premises on the day of the expiration of this lease, in as good condition as the same were in when received, reasonable wear and tear thereof excepted.

"Second. That the said premises shall be used for Rice culture, general farming (Row crops) and grazing, and for no other purpose.

"Third. That Lessee will not sub-let said premises, or any part thereof, to any person or persons whatsoever, *accept* for Grazing purposes without the consent of said Lessor, In Writing, thereto first obtained.

"Fourth. That on failure to pay the rent in advance, as aforesaid, or to comply with any of the foregoing obligations, or in violation of any of the foregoing covenants, the Lessor may declare this lease forfeited as Lessor's discretion and Lessor or Lessor's agent or attorney shall have the power to enter and hold, occupy and repossess the entire premises hereinbefore described, as before the execution of these presents.

"Fifth. Any fence or cross fence built on said land by Lessee or her nominee, during the terms of this Lease, may be removed from said land by Lessee or her nominee, before or at the expiration of this Lease Agreement.

"Sixth. This Lease is made subject to the terms and conditions of any Oil, Gas and Mineral Lease now on said land, or any Mineral Lease that may be executed by said Lessor, covering said land.

"In Testimony Whereof, The parties to this agreement have hereunto set their hands in duplicate, the day and year above written.

"/s/ N. Jay Cheek

"/s/ Ralph H. Cheek,
                    Lessor

"/s/ Mrs. T. B. Tucker,
                    Lessee"

(Not before the jury).

Exhibit B
                    "Bushnell Ill
                    "Sept. 21, 1948
"Mrs. T. B. Tucker
    "Katy, Texas.
"Dear Mrs. Tucker—

"As you may know, the lease on our tract of land in Harris Co will expire Jan 1. 1949. and we of course are wondering if you will want to renew it.

"We would like to continue our pleasant relations with you and would appreciate hearing of your intentions.

"We have hoped to come to Texas and look over our interests there and if we do we will sure look you up.

"Thanking you and awaiting your early reply. I am

                    "Very truly yours
                    "/s/ N. Jay Cheek."

(Not before the jury)

"Sept. 28th, 1948.

"Mr. N. Jay Cheek,

"Bushnell, Illinois.

"My Dear Sir:

"My Sister, Mrs. T. B. Tucker, will be out in the Lord's work for two or three weeks and she has requested me to answer your letter of Sept. 21st.

"This is to advise you that Mrs. Tucker farmed about 450–acres of your land to rice this year. All of your Section out North-east of Katy, was used for grazing purposes last year.

"It is the consensus of opinion among Rice Farmers in this area, that it pays big dividends to let their rice land rest for three or four *year* before using the same land for rice culture again. Rice grows in water and it is necessary to keep rice land covered with water for 100 to 120 days to mature the crop, so, it is the part of wisdom to leave the land exposed to the sun and air a few years to rebuild the soil again.

"Mrs. Tucker would be interested in leasing your Section of land for a term of Four (4) years beginning the first day of next January, providing she could arrange to use said land for grazing purposes for the years 1949, 1950 and 1951, *And* then use 450 acres for rice culture again in 1952. Mrs. Tucker could pay one-fourth (¼) of the total rent for the four year period, on the first day of January of each year, so you would have an equal amount each year.

"I wish you would give this matter your attention and submit a proposition that would be satisfactory to you and your brother Ralph, and when my Sister returns home, we will try and make a deal with you.

"Thanking you in advance for an early reply.

"Yours very truly,
"Edw. C. Stockdick, Katy, Texas."

---

(Not before the jury).

"Bushnell Ill
"Oct 27, 1948

"Mrs. T. B. Tucker
"Katy, Texas.
"Dear Mrs. Tucker—

"Received a letter from Mr. Stockdick regarding your lease on the W. B. Reeves section. He spoke of grazing the land for a couple of years to rebuild the soil again. We, of course, do our land the same way here and feel that we are repaid in crops when this is done.

"We are willing to lease to you for a term of four or five years to farm or graze as you see fit and feel that the benefits, either way, are in your favor, that is the fat years go along with the lean.

"We therefore feel that in-as-much as you have had the benefits of the good crops off of good soil for the past years, it is only right that the present rental should continue as is, that is $550 payable annually. and to be farmed as you see fit.

"It seems that it has been impossible for us to make the trip down and would rather go on as we have in the past.

"We have had inquiries about leasing or buying the surface but are content to carry on as in the past.

"If you have any suggestions we will be glad to hear from you.

"Thanking you
"I am Yours truly
"/s/ N. J. Cheek"

---

(Not before the Jury)
"Katy, Texas
"November 15, 1948

"Mr. N. J. Cheek
"Bushnell, Illinois
"Dear Mr. Cheek:

"After surveying the land we had in rice this year on your place, we find there was about 514 acres of your land used for rice culture this year. Under the terms of the lease we had permission to use 450 acres of your land this year for rice culture, but since we planted 514 acres we owe you $2.00 an acre for the extra 64 acres seeded to rice and I will add that amount to your rental check.

"I have arranged to sublease approximately 170 acres off the west side of your section for the year 1949 for rice culture. This land is too high for us to water successfully with our well and has never had rice on it except the small amount shown on the map, farmed this year and the *yeild* was so short that it won't hurt the land any to use that acreage again this coming

year: I will enclose a check in the sum of $2.00 an acre or $340.00 in addition to the regular $550.00 annual rent.

"Last week, Mr. Davenport with the Harris County Flood Control Department came to see me with reference to the 50 foot easement that he said you gave to Harris County for the purpose of digging a ditch 28 feet wide at the top along the north side of your section. If you did give them permission to do this work the ditch will swallow up the big rice canal we use for irrigation purposes and a farm road on the north side of your section. We spent several hundred dollars in the Spring of this year with a drag line trying to get a lift so we could water more of your land on the west side. The drag line canal will be costly to replace. Mr. Davenport didn't show me the easement you signed, giving them permission to do this work but he said you executed the easement a week or ten days ago.

"If you haven't given the County this easement, perhaps it would be well to make a personal investigation before you make it final. I think they should either make us a canal equal to the one they destroy or pay damages.

"Kindly give this important matter your immediate attention and let me hear from you by return mail.
　　　　　　　　"Respectfully,
　　　　　　　　"/s/ Mrs. T. B. Tucker

"$128.*pp* check for 64 A. enclosed
"$890.00 check Annual Rental & 2 per Acre or 340 additional"

---

(Not before the jury)
　　　　　　　　"Bushnell Ill
　　　　　　　　"Nov 29, 1948
"Mrs. T. B. Tucker,
　　"Katy, Texas,
"Dear Mrs. Tucker—
"Enclosed find the lease on the Reeves Survey. I was delayed in getting the signature of my brother.

"Am glad you got the Dinner Creek dredging settled with the Harris Co Drainage District We would much rather have the ditch somewhere else.

"We have asked for the return of our easement.

"Thanking you for your interest and promptness in our behalf I am
　　　　　　　　"Yours　truly
　　　　　　　　"/s/　N Jay Cheek.