**SOUTHWESTERN STATES OIL AND GAS COMPANY, Appellant,**

v.

**SOVEREIGN RESOURCES, INC., et al., Appellees.**

No. 16112.

Court of Civil Appeals of Texas.

Dallas.

Feb. 15, 1963.

Rehearing Denied March 15, 1963.

Strasburger, Price, Kelton, Miller & Martin, and Royal H. Brin, Jr., Dallas, for appellant.

Kilgore & Kilgore and Carl Mays, Dallas, and Henry Gossett, Longview, for appellees.

DIXON, Chief Justice.

This is an appeal from a summary judgment.

Appellant Southwestern States Oil and Gas Company, hereinafter called Southwestern, sued appellee Sovereign Resources, Inc., hereinafter called Sovereign, for damages, actual and punitive. The action is for the breach of an alleged written contract known as Exhibit No. 1, dated September 11, 1959; and in the alternative for breach of an alleged written contract known as Exhibit No. 2, dated sometime in November 1959. The two instruments are concerned with the same subject matter, the alleged sale of oil and gas properties by Southwestern to Sovereign.

C. M. Wood and W. C. Curry, officer and director, respectively, of Sovereign, were sued individually on the grounds of wrongful interference with the contract between the two companies.

Part of the consideration for the alleged sale was the transfer to Southwestern of 200,000 shares of stock in Sovereign. Southwestern pled that the stock was valued at $3.00 per share at the date of the contract, $6.00 per share at the time suit was filed, and would be $50.00 per share at the time of trial. Judgment was sought for $9,400,000.00 actual and $1,000,000 punitive damages.

As to Exhibit No. 1 Sovereign defended on the grounds that (1) the instrument shows on its face that it was a mere "letter of intent", not intended by the parties to be a binding contract, and that the parties contemplated drawing a formal contract at a later date; (2) Exhibit No. 1 is insufficient under the Statute of Frauds, Art. 3995 Vernon's Ann.Civ.St., because the oil and gas leases, which were the subject matter of the alleged contract, are not sufficiently described; and (3) even if Exhibit No. 1 be considered sufficient as a contract, the undisputed evidence shows that it was later abandoned by the parties.

As to Exhibit No. 2 Sovereign defended on the grounds that (1) the instrument was never signed and the consideration clause is blank; (2) the instrument was never accepted as a contract by Sovereign; and (3) it is insufficient under the Statute of Frauds.

Wood and Curry, the individual defendants, assert the above defenses and in ad-

dition claim that they are not liable because they were acting in behalf of Sovereign as officer and director of the corporation.

All defendants filed motions for summary judgments. The motions were sustained. Judgment was accordingly entered that Southwestern take nothing by its suit.

In its first and second points on appeal appellant Southwestern contends that the court erred in sustaining appellee's motions for summary judgment because (1) Exhibit No. 1 shows on its face to be a binding contract; and (2) the pleadings, affidavits and depositions show that there is at least a material disputed fact issue as to whether Exhibit No. 1 was intended as a contract or merely as "letter of intent."

Exhibit No. 1 is in the form of a letter from Sovereign to Southwestern. It is true, as Southwestern points out, this letter is signed by C. M. Wood as President of Resources, and bears a written acceptance and approval dated September 11, 1959 signed by George Myer as President of Southwestern. It is true also that in several places in the instrument paragraphs begin with the words "We agree to * * *" and "You agree to * * *". Nevertheless we are unable to agree with appellant that the instrument on its face shows to be a binding contract, or even that a fact question in that regard is presented by the record.

In one place the instrument expressly refers to "whatever clouds or liabilities are reflected in the *final contract*." (Emphasis ours). Appellant says that this reference to a later final contract is not conclusive of the question before us, citing Corbin on Contracts, Sec. 30 Vol. 1, page 83, and 13 Tex.Jur.2d 154. But we cannot ignore a material paragraph in the instrument which we here quote:

"Sovereign is presently in the process of preparing a Registration Statement to be filed with the S.E.C. It is agreed that this Statement shall be filed within forty-five days from date, and approved within ninety days from date of filing.

*We agree that this Contract shall not be binding and shall have no force and effect until and unless same is approved by the S.E.C. and the stock hereinafter named is fully registered and freely transferable. Stock to be sold without restriction of any kind and approved by the S.E.C. * * *"* (Emphasis ours).

■ The above quoted paragraph of itself, containing as it does a condition precedent, seems to us to negative Southwestern's contention that Exhibit No. 1 shows on its face to have been intended by the parties as a binding contract. Couch v. Stewart, Tex.Civ.App., 200 S.W.2d 642. Any doubt as to the meaning of the instrument is resolved against Southwestern when we consider the quoted paragraph along with other provisions, especially the reference to a later final contract.

■ Is there a fact question as to whether Exhibit No. 1 was intended as a binding contract? In our opinion the correct answer is no. Whether correspondence constitutes a contract or a preliminary negotiation must be determined by the language used and the attending circumstances. And when, as is the case here, the circumstances are undisputed, the question becomes one of law, not of fact. Hegar v. Tucker, Tex.Civ. App., 274 S.W.2d 752, (Syl. 3).

■ The fact that the parties contemplated a later "final contract" is in itself some evidence that the parties did not intend Exhibit No. 1 to be their final closing contract. Gilbert v. Texas Co., Tex.Civ. App., 218 S.W.2d 906, 941, (Syl. 4). And such fact coupled with the further fact that all of the essential terms of the contract had not been agreed upon, concludes the question against appellant's contention. Liquids Dispatch Line v. Texas Power & Light Co., Tex.Civ.App., 6 S.W.2d 169; Cranfill, et al. v. Swann Petroleum Co., Tex. Civ.App., 254 S.W. 582; Diamond Mill Co. v. Adams-Childers Co., Tex.Civ.App., 217 S.W. 176; Prince v. Blisard, Tex.Civ.App., 210 S.W. 301; Brillhart v. Beever, Tex.

Civ.App., 198 S.W. 973. In our discussion of the next point on appeal we shall develop more fully some of the circumstances to which we refer. Appellant's first and second points are overruled.

In their third point appellant Southwestern asserts that the pleadings, affidavits and depositions show there is a material fact issue as to whether the parties abandoned Exhibit No. 1 as a contract.

■ We see no merit in the third point. In our opinion the evidence of later negotiations conclusively shows that the parties had ceased to look to Exhibit No. 1 as a basis for their pending business deal. The provision for registration with and approval of the stock by S.E.C. was abandoned on the basis of an opinion by an attorney for Resources that sush registration and approval were not necessary; a provision that Southwestern would try to obtain a loan of $80,000 to $120,000 from Republic National Bank proved unsuccessful because the Bank apparently preferred to deal with Sovereign as to any loan on the properties involved; Southwestern proposed a plan whereby Resources would issue 2000 shares of stock as part of a fee to Joe Spradling, a broker, who was trying to negotiate the deal between the parties; Southwestern wanted Resources to assume its notes owing to Mercantile National Bank at Dallas; also to agree that if within 12 months from the closing, Resources filed a registration statement with S.E.C. covering an offering of capital stock, shares issued to Southwestern's stockholders under this proposal would be included; and it was tentatively agreed that Southwestern would be dissolved and the shares in Resources would be issued directly to Southwestern's shareholders, instead of to Southwestern.

All the above and other material changes were included in a proposed form of a for-mal contract prepared by appellant Southwestern's attorney and forwarded to appellee Resources November 24, 1959. This document is known as Exhibit No. 2. Some, but not all, of these changes had been tentatively agreed to by Resources. Exhibit No. 2 was never signed or accepted by Resources, as we shall later point out. Appellant's third point is overruled.

Appellant's fourth point in substance is that there is a material disputed fact issue as to whether Exhibit No. 2 was accepted by appellee. Again we must disagree with appellant.

The only purported evidence in the record that Resources ever signed Exhibit No. 2 is an unsworn letter from Ross Bohannon, a Dallas attorney and a stockholder in Resources. Exhibit No. 2 had been sent to him to be forwarded to the New York Office of Resources. The letter is as follows:

"December 4, 1959
"Mr. George M. Meyer
"Mercantile Securities Building
"Dallas, Texas

"Dear Mr. Meyer:

"I gave you a letter on November 24th relative to the closing of the deal between Sovereign Resources, and Southwestern States Oil and Gas Company,

"As usual, these matters don't come off as quickly as they are scheduled. Mr. Wood and the New York Attorneys have both assured me that the papers have been executed and the matter should be ready for closing. The papers should be received here, tomorrow; if not, they will certainly be here by Monday so that we may be able to consummate the deal at that time.
"Very truly yours,
"Ross Bohannon" *

* It is interesting to note that Bohannon later completely repudiated his letter. We quote from his affidavit attached to appellee's motion for summary judgment:

"George Meyer came to my office and advised me that he was trying to arrange for a credit at the bank that it would be helpful to him if he could have a letter from me stating that the

■ We ascribe no probative effect whatever to the above quoted letter. It is merely an unsworn statement wherein one person said that other persons had assured him "that the papers have been executed." What papers? Such a letter will not be accepted as a substitute for the requirement of Art. 3995, V.A.C.S. that documents of a certain class shall not be enforceable unless signed by the party to be charged.

This conclusion seems to us to be bolstered, if it needs any bolstering, by other parts of the record. In a Request for Admissions Southwestern was called on to admit that no writings signed by Sovereign had amended, supplemented, or in any way affected Exhibit No. 1. In its sworn reply Southwestern denied the request. Then Resources filed a motion under Rule 167 Texas Rules of Civil Procedure, requesting that Southwestern be required to produce any such documents claimed to be signed by Sovereign. In response to this motion Southwestern admitted that unless additional documents were in possession of Resources only certain listed signed documents could be considered to supplement, amend, or in any way affect Exhibit No. 1.

Among the documents so listed was a telegram to Bohannon from New York Attorney Leon Greenapple representing Sovereign. This telegram, dated December 7, 1959 which was sent after an unsigned draft of Exhibit No. 2 had been forwarded to New York, is as follows:

"AFTER CONFERENCE WITH WOOD HE PROPOSES FOLLOWING CHANGES IN SOUTHWESTERN OIL AND GAS AGREEMENT. ALL ASSETS TRANSFERRED SUBJECT TO REVIEW AND APPROVAL OF CURRY; NO MORE THAN 200,000 SHARES TO BE ISSUED; NO SHARES TO BE ISSUED TO SPRADLING; CERTAIN TECHNICAL MODIFICATION TO FOLLOW BY LETTERS TO COMPLY WITH RULE 133 SECURITIES ACT OF 1933. DO NOT UNDERSTAND REASON FOR LEAVING AGREEMENT SUBJECT TO CANCELLATION UNTIL DECEMBER 17, 1959. TELEPHONE ME UPON RECEIPT

"L GREEAPPLE."

By written stipulation it was thereafter agreed that the documents listed complied with Resources' motion under Rule 167 T.R.C.P.

In his deposition George Myer, President of Southwestern, states that after the above telegram was received, Marvin Wise, Attorney for Southwestern called Attorney Greenapple in New York by long distance telephone. Certain changes were to be made in Exhibit No. 2, the draft of the contract as proposed by Southwestern. Greenapple was to redraft the document with changes and submit it to Southwestern for approval.

■ In the light of the foregoing undisputed facts we hold that there is no disputed fact issue, as to whether Exhibit No. 2 was ever accepted as a contract by Sovereign. The undisputed testimony shows that

deal with Sovereign Resources, Inc. would be closed. At that time the contacts which I had with C. M. Wood indicated to me that he was anxious to try to work out a deal, if possible, and I felt that some deal would be worked out between the parties either on the basis represented by the form of agreement delivered to me by George Meyer on November 24, 1959, or on some other basis acceptable to both parties. Accordingly at his request I wrote to George Meyer a letter, copy of which

is attached hereto as an exhibit. At the time I wrote the letter I had not heard from C. M. Wood since forwarding the forms of agreement to him on November 24th. *Neither C. M. Wood nor anyone else advised me that the forms of agreement which I forwarded to C. M. Wood on November 24th had been signed. The letter was written as an accommodation to Mr. Meyer and on the basis of my own understanding and opinion, as heretofore set out.*" (Emphasis ours.)

the document was never signed or accepted. Appellant's fourth point is overruled.

■ Appellant's fifth point is to the effect that the court erred in sustaining appellee's motion for summary judgment since the oil and gas properties to be sold and transferred were adequately described in writing. We have held that both Exhibit No. 1 and Exhibit No. 2, for other reasons, do not constitute binding contracts, therefore we see no need to pass on the sufficiency of the property descriptions.

■ In its sixth and last point appellant claims that the record raises a fact issue as to whether the individual appellees, Wood and Curry, wrongfully caused Sovereign to breach its contract. We must hold against Southwestern on this point for two reasons:

(1) As we view the matter no binding contract was entered into between Southwestern and Sovereign, so there could be no wrongful breach of contract.

■ (2) Wood was President and Curry was a director of Sovereign. They were not mere interlopers. They are not to be considered third parties who had no legal interest in the alleged contract. It is not shown that in any way they went beyond their powers or authority as officer and director of their corporation. It was their duty to protect the interests of their corporation. There is no evidence of fraud on their part. Under the circumstances disclosed by this record there is no individual liability imposed on them if they caused their corporation to refuse to consummate the deal with Sovereign. Terry v. Zachry, Tex.Civ.App., 272 S.W.2d 157; Greyhound Corporation v. Commercial Casualty Insurance Company, 259 App.Div. 317, 19 N.Y.S. 2d 239; Schuster v. Largman, 318 Pa. 26, 178 A. 45; 3 Fletcher Corporations, Sec. 1001. Appellant's sixth point is overruled.

The judgment of the trial court is affirmed.